108 June 1, 2023 No. 14

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JOHN MICHAEL HALEY,
*Respondent on Review.*

(CC 19CR61540, CC 19CR50469);
(CA A173760 (Control), A173761)
(SC S069671)

On review from the Court of Appeals.*

Argued and submitted March 3, 2023, at Willamette University College of Law, Salem, Oregon.

Erica Herb, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Rond Chananudech, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, Justices, and Balmer and Baldwin, Senior Judges, Justices pro tempore.**

BUSHONG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____

 * On appeal from the Multnomah County Circuit Court, Heidi H. Moawad, Judge. 319 Or App 629, 511 P3d 440 (2022).

 ** James, J., did not participate in the consideration or decision of this case.

**BUSHONG, J.**

The issue presented in this criminal case is whether a college administrator's office within a university building is a "separate unit" in the building, thereby making the office a "separate building" for purposes of the second-degree burglary statute, ORS 164.215. Defendant was convicted under that statute after he entered the administrator's office and stole a briefcase. On appeal of that conviction, the Court of Appeals concluded that the office was not a "separate unit," and thus not a "building" as defined in ORS 164.205(1), because the administrator shared the room's "function and occupation" with the university. *State v. Haley*, 319 Or App 629, 633-34, 511 P3d 440 (2022).

We disagree with that court's interpretation and application of the statute. Whether a space within a building is considered a "separate unit" as defined in ORS 164.205(1) depends on the structure, occupancy, function, physical layout, and appearance of both the building as a whole and the space at issue. Here, there was sufficient evidence in the record for a factfinder to find, based on those factors, that the administrator's office was a "separate unit" as defined in ORS 164.205(1) for purposes of the second-degree burglary statute. The trial court did not err in denying defendant's motion for judgment of acquittal on that charge. Accordingly, we reverse the Court of Appeals' decision and affirm the trial court's judgment.

## I.   FACTS AND PROCEEDINGS BELOW

Because the issue on review arises from the trial court's denial of defendant's motion for judgment of acquittal, we describe the evidence in the light most favorable to the state. *See State v. Reed*, 339 Or 239, 243, 118 P3d 791 (2005) ("In reviewing a trial court's order denying a motion for judgment of acquittal, this court views the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the crimes in question beyond a reasonable doubt.").

Defendant entered Waldschmidt Hall on the University of Portland's campus. The hall has five floors. The first two floors are generally open to the public and

contain offices frequented by students and others; the offices include the registrar's office, the financial aid office, and the admissions office. The remaining three floors contain administrative and executive offices. Defendant went to the third floor and approached Room 307, which is the office for the Associate Director for Major Gifts. A plaque outside the door bears the office number and Associate Director's name and title. Room 307 is fully enclosed; it has four walls and a door. The room contains a desk, computer, bookcase, and three chairs. The room's door locks automatically when shut. But, on the day that defendant approached the room, the Associate Director had propped the door open and left the room unoccupied. While he was away, defendant entered the room and stole a briefcase.

The state charged defendant with second-degree burglary, among other crimes. Count 2 of the indictment alleged that defendant "did unlawfully and knowingly enter and remain in a building located at UNIVERSITY OF PORTLAND, WALDSCHMIDT[] HALL ROOM 307" with the intent to commit a crime therein. The case was tried to the court, and, at the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the burglary charge, asserting that the state had failed to present sufficient evidence that Room 307 was a "separate building" for the purposes of the burglary statutes. The trial court denied that motion. Later, when delivering its verdict, the trial court explained its reasoning. It stated that, under Court of Appeals case law, a "separate unit" is "a constituent and isolable member of some more inclusive whole." *See, e.g.*, *State v. Rodriguez*, 283 Or App 536, 542, 390 P3d 1104, *rev den*, 361 Or 543 (2017) (so stating). The court then applied that test and concluded that Room 307 was a "separate unit." Based on that conclusion, the court convicted defendant of second-degree burglary.

Defendant appealed, assigning error to the trial court's denial of his motion for judgment of acquittal. The Court of Appeals reversed, concluding that, "[b]ecause Room 307's function and occupation were shared with that of the parent building, it was not a separate unit, and the trial court erred in denying defendant's [motion for judgment of

acquittal] on the burglary conviction." *Haley*, 319 Or App at 633-34. We allowed the state's petition for review.

## II.   STANDARD OF REVIEW AND PARTIES' ARGUMENTS

When, as here, a trial court denies a defendant's motion for judgment of acquittal based on an interpretation of a statute, we review the denial for errors of law. *See State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042 (1999) (trial court's interpretation of a statute is reviewed for legal error).

To resolve the parties' dispute in this case, we must interpret ORS 164.205(1), which defines "building" to include "separate units" within a building. When interpreting a statute, we attempt to discern the intent of the legislature that enacted it. ORS 174.020; *see also State v. McDowell*, 352 Or 27, 30, 279 P3d 198 (2012) (explaining that "[o]ur task is to discern what the legislature contemplated" in enacting the statute at issue). To determine that intent, we give primary weight to the statutory text in context, with appropriate additional weight accorded to any relevant legislative history. *City of Portland v. Bartlett*, 369 Or 606, 610, 509 P3d 99 (2022); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Context includes other provisions of the same statute and other related statutes, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), as well as case law interpreting the statute at issue and related statutes, including earlier versions of those statutes, *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000).

We begin with a brief statutory summary, to further assist in understanding the statutory issue and the parties' arguments. Under ORS 164.215(1), a person commits second-degree burglary if the person "enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.205(1) defines "building" for purposes of that statute, in part, as follows: "Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building." Thus, under that definition, a "building" includes "separate units" within a building. *Id.* And each separate unit within a building is

treated as "a separate building," in addition to being part of the building it occupies. *Id.* As noted, ORS 164.205(1) also includes a list of examples, stating that the term "separate units" "includ[es], but [is] not limited to, separate apartments, offices or rented rooms[.]" *Id.*; *see also State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011) ("Typically, statutory terms such as 'including' and 'including but not limited to,' when they precede a list of statutory examples, convey an intent that an accompanying list of examples be read in a nonexclusive sense.").

The key interpretive question in this case, then, is the meaning of "separate units" in ORS 164.205(1). The state contends that the test for determining whether an office within a building is treated as a "separate unit" under that statute should be whether the office is "isolable and structurally distinct" from the building that it occupies. Defendant, by contrast, contends that a "separate unit" requires a "possessory or ownership interest" that is different from the building that it occupies. As noted above, the Court of Appeals' test focused on the office's "function and occupation," concluding that an office that shares the same broad function and occupation as the main structure is not a "separate unit." *Haley*, 319 Or App at 633-34.

We decline to adopt any of those tests. Instead, as explained below, we conclude—based on the text, context, and legislative history of ORS 164.205(1)—that whether a space within a building is a "separate unit"—and, thus, a "building" for purposes of the burglary statutes—depends on the structure, occupancy, function, layout, and appearance of both the space and the building containing that space.

## III.  ANALYSIS

A.  *Text*

We begin with the text of ORS 164.205(1), which, again, defines "building" for purposes of the burglary and criminal trespass statutes as follows:

> "'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on

business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building."

Thus, the term "building" includes (1) structures that fall within the "ordinary meaning" of "building"; (2) any other structure "adapted for overnight accommodation of persons or for carrying on business therein"; and (3) "separate units" within those two types of structures.

This case concerns the meaning of the third type of "building": a "separate unit." As we will explain, the text of the definition of "building" provides several indications of what the legislature intended "separate unit" to mean.

First, the sentence at issue states, "*Where a building consists of separate units*, *** each unit is *** a separate building." ORS 164.205(1) (emphasis added). The introductory phrase of that sentence indicates that, in the legislature's view, not all buildings consist of "separate units." And, because most buildings contain rooms, it further indicates that, in the legislature's view, not all rooms are "separate units."

Second, the legislature used the term "separate." The definition of the word "separate," when used as an adjective as it is in this statute, includes:

- "set or kept apart : standing alone : DETACHED, ISOLATED,"

- "not shared with another : INDIVIDUAL, SINGLE,"

- "existing by itself : AUTONOMOUS, INDEPENDENT," and

- "dissimilar in nature or identity : DISTINCT, DIFFERENT."

*Webster's Third New Int'l Dictionary* 2069 (unabridged ed 2002). All those meanings are similar. They overlap with each other and can all describe parts of a building. As discussed next, together, they provide clues about what constitutes a "separate unit."

The first meaning—"set or kept apart : standing alone : DETACHED, ISOLATED"—indicates that, to be a "separate unit," a unit must be physically separate from other units; that is, it must be physically isolable from other units.

The second meaning—"not shared with another : INDIVID-UAL, SINGLE"—indicates that the unit must be used or occupied by some person or persons to the exclusion of others. That suggests that whether a unit is used or occupied by a single person or a discrete group of persons to the exclusion of others is relevant to whether a unit is a "separate unit." The third meaning—"existing by itself : AUTONOMOUS, INDEPENDENT"—reinforces that indication and suggests that a unit's function or purpose is relevant when determining whether it is a "separate unit." That is because the definition of "autonomous" includes "undertaken or carried on without outside control : SELF-CONTAINED." *Id.* at 148. Finally, the fourth meaning—"dissimilar in nature or identity : DISTINCT, DIFFERENT"—indicates that the unit must have its own identity that is distinct or different in layout or appearance from other units. To be a "separate unit," then, a unit must be recognizable as separate from other units. *See id.* at 659 (defining "distinct," as relevant here, as "capable of being easily perceived").

The legislature's use of the term "unit" provides a third indication of the intended meaning of "separate unit." Notably, the legislature did not provide that, if a building contains separate rooms, each room is itself a building. Instead, it used the term "separate unit." The relevant definition of "unit" is as follows:

> "a single thing or person or group that is a constituent and isolable member of some more inclusive whole : a member of an aggregate that is the least part to have clearly definable separate existence and that normally forms a basic element of organization within the aggregate <the township in the usual [unit] of government> <the family as a basic [unit] of society>."

*Id.* at 2500.

The legislature's use of the term "unit" is significant. A "unit" is a part of a whole, but it is not just any part; it is a particular type of part. It is "a *single* thing or person or group" that is an "*isolable* member of some more inclusive whole"; it is "a member of an aggregate that is the *least part to have clearly definable separate existence* and that normally forms a *basic element of organization* within the aggregate."

*Id.* (emphases added). Thus, a "unit" is not necessarily the smallest part of an aggregate. As the example of the family as a basic unit of society illustrates, a "unit" itself can have individual members. A "unit" can be, for example, a group of persons or a group of rooms. What constitutes a "unit" depends on how the aggregate is divided and organized. Thus, the legislature's choice of the term "unit" shows that the legislature did not necessarily intend for all rooms, or all groups of rooms, in a building to be "separate units." Whether a room, or a group of rooms, constitutes a "separate unit" depends on how the building itself is divided and organized, which can depend on the purpose or function of the building. Thus, if a building has multiple rooms, each room could be—but is not necessarily—a "separate unit" within the building.

That understanding is supported by a fourth aspect of the text of the definition of "building": the examples of "separate units" included in the definition. Again, the second sentence of the definition states, "Where a building consists of separate units, *including, but not limited to, separate apartments, offices or rented rooms*, each unit is, in addition to being a part of such building, a separate building." ORS 164.205(1) (emphasis added).

The first example is "separate apartments." Apartments can be single rooms—a studio apartment, for example—or they can have multiple rooms, including rooms that are physically isolable, like most bedrooms and bathrooms. An apartment building can have multiple "separate apartments," each consisting of one or multiple rooms. The fact that the legislature chose "separate apartments" as an example shows that (1) separate occupancy can define a "separate unit"; and (2) not all rooms in a building are deemed to be "separate units." It shows that the legislature intended that, to be a "separate unit," a room must be both (1) "separate"— that is, physically isolable, used or occupied by a single person or discrete group of persons, self-contained, and recognizable as its own unit—and (2) a "unit"—in that, like an apartment in an apartment building, it must be the "least part to have a clearly definable separate existence" from the other units that "normally forms a basic element of organization within the aggregate" of all the units. *Webster's* at 2500.

Notably, the legislature also included "rented rooms" as examples of "separate units." The inclusion of "rented rooms" indicates that the legislature was aware that not all rooms within a building should necessarily be considered "separate units." The legislature's choice of "rented rooms" as an example is consistent with the view that whether a room is a "separate unit" depends, in part, on how the building containing the room is divided and organized. It makes sense for a rented room, such as a hotel room, to be a "separate unit" for the purposes of the burglary statutes; but it would not make sense for the bathroom within a hotel room to be a "separate unit" for those purposes because the bathroom is not rented separately from the hotel room.

The examples of "apartments" and "rented rooms" inform the other example of "separate units" listed in the statutory definition set out in ORS 164.205(1): "offices." "Office" is a term that can be used to describe both groups of rooms as well as individual rooms. The dictionary defines "office," in part, as follows:

> "[A] place where a particular kind of business is transacted or a service is supplied[, such] as **a :** a place in which the functions (as consulting, record-keeping, clerical work) of a public officer are performed[;] **b :** the directing headquarters of an enterprise or organization[;] *** [or] **c :** the place in which a professional *** (as a physician or lawyer) conducts *** professional business[.]"

*Webster's* at 1567. That definition suggests that an "office" can be a single room where business is conducted, but it also may consist of multiple rooms. For example, one of the meanings—"the directing headquarters of an enterprise or organization"—may consist of multiple rooms or even multiple buildings. Physicians and lawyers may conduct business in offices with one room or with multiple rooms. A "law office" is an office, as is a "lawyer's office." Thus, on its own, the term "office" does not resolve whether every room where a person does business is a "separate unit" for the purposes of the burglary statutes. But the context of the term indicates that whether a room where a person does business is a "separate unit" depends on whether it is akin to "apartments" and "rented rooms." *See State v. McCullough*, 347 Or 350, 361 n 8, 220 P3d 1182 (2009) (under the textual canon

of construction *noscitur a sociis*, "the meaning of words may be indicated or controlled by those with which they are associated" (internal quotation marks omitted)).

In sum, from the text of the definition of "building" set out in ORS 164.205(1), we can draw several conclusions. First, the legislature did not intend to treat every room as a "building" for the purposes of the burglary statutes. It did not so provide; instead, it provided that "[w]*here* a building consists of *separate units*, *** each *unit* is *** a separate building." ORS 164.205(1) (emphases added). Second, to be "separate," a room (or a combination of rooms) must be physically isolable, used or occupied by a single person or discrete group of persons, self-contained, and recognizable as its own unit. Third, to be a "unit," a room (or a combination of rooms) must be the "least part to have a clearly definable separate existence" and be in the form of the "basic element of organization" within the building. Fourth, to be a "separate unit," a room (or a combination of rooms) must be akin to "separate apartments" or "rented rooms."

B.  *Context*

The context of ORS 164.205(1) sheds some additional light on the legislature's intent. "Building" is defined in ORS 164.205(1) for purposes of the offenses of burglary and criminal trespass in ORS 164.205 to 164.270. In this case, defendant was charged with second-degree burglary—a Class C felony—which is defined by ORS 164.215. Under that statute, a person commits second-degree burglary if the person "enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215(1). A person commits first-degree burglary—a Class A felony—if the person violates ORS 164.215 and the building is a "dwelling." ORS 164.225.

The burglary statutes parallel the criminal trespass statutes. A person commits second-degree criminal trespass—a Class C misdemeanor—when the person "enters or remains unlawfully in a motor vehicle or in or upon premises." ORS 164.245(1). A person commits first-degree criminal trespass—a Class A misdemeanor—when the person enters or remains unlawfully in, among other things, a "dwelling." ORS 164.255.

"Premises" is defined in ORS 164.205(6) to include "any building and any real property, whether privately or publicly owned." And "dwelling"—defined in ORS 164.205(2)— means "a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." Thus, the statutory definitions of both "premises" and "dwelling" for purposes of the criminal trespass and burglary statutes include a "building," which, as noted above, includes "separate units" within a building.

As a result, a person could commit a criminal trespass or a burglary if the person enters or remains unlawfully in a separate unit within a building. And, as explained next, "enter or remain unlawfully" is defined for purposes of these offenses in ORS 164.205(3) by reference to the person's authority to be in the forbidden space.[1]

The burglary and criminal trespass statutes do not expressly specify the mental state required to hold a person criminally culpable for violating those statutes. But, to establish the element of "enter or remain unlawfully" as required for criminal liability for committing the offenses of burglary or criminal trespass, the person charged with the offense must have acted with the required culpable mental state. *See* ORS 161.095(2) (providing that criminal liability requires proof that a person "acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state").

Generally, if the operative statute does not specify the required culpable mental state, culpability is established "only if a person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115(2). Without

---

[1] ORS 164.205(3) provides:

"'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so;

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge;

"(c) To enter premises that are open to the public after being lawfully directed not to enter the premises; or

"(d) To enter or remain in a motor vehicle when the entrant is not authorized to do so."

deciding what culpable mental state is required to establish the element of "enter or remain unlawfully"—an issue not presented in this case—we note that the minimum culpable mental state (criminal negligence) would seem to at least require that a person charged with criminal trespass or burglary "fails to be aware of a substantial and unjustifiable risk" that entering or remaining in the space at issue is not authorized. *See* ORS 161.085(10) (defining "criminal negligence").

And in any event, in the context of determining whether a person "enters or remains unlawfully" in a "separate unit" of a "building," the physical layout and appearance of the "separate unit" in a building must put a person charged with criminal trespass or burglary on notice that there is a substantial and unjustifiable risk that the person is entering or remaining in a "separate unit." *See, e.g.*, *State v. Plowman*, 314 Or 157, 160, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993) ("The terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." (Internal quotation marks omitted.)).

C.   *Case Law*

As part of considering text and context, we also consider "case law interpreting the statute at issue and related statutes, including earlier versions of those statutes." *Walker*, 330 Or at 109. We summarized the history and evolution of Oregon's burglary statutes in *State v. Henderson*, 366 Or 1, 455 P3d 503 (2019). There, we noted that Oregon's original statutory definition of burglary, adopted in 1864, provided as follows:

> "If any person shall break and enter any dwelling house in the night time, in which there is at the time some human being, with intent to commit a crime therein; or having entered with such intent, shall break any such dwelling house in the night time, \*\*\* such person shall be deemed guilty of burglary \*\*\*."

366 Or at 8-9 (quoting General Laws of Oregon, Crim Code, ch XLIV, § 542, p 535 (Deady 1845-1864)). We also noted that, between 1864 and 1970, "Oregon's burglary statute

had changed in three respects: eliminating the elements of night time entry, presence of a person, and actual breaking." *Id.* at 9-10. Those changes "reflected a significant expansion from the common-law understanding of burglary." *Id.* at 10.

The 1971 Legislative Assembly enacted a revised Criminal Code, which included the definition of "building" in ORS 164.205(1) at issue here. *See* Or Laws 1971, ch 743, § 135 (essentially unchanged since that time). That revised Criminal Code, enacted on recommendations from the Criminal Law Revision Commission (Commission), "further expand[ed] the scope of burglary." *Henderson*, 366 Or at 10. Broadly defining "building" for purposes of criminal trespass and burglary was consistent with that expansion.

D.   *Legislative History*

The legislative history sheds some additional light on the legislature's intent in defining the term "building" in ORS 164.205(1) to include "separate units" and, in particular, "offices" within a building for purposes of the burglary and criminal trespass laws. As noted above, the legislature enacted that statute as part of the 1971 revision of the Criminal Code proposed by the Commission. Records of the Commission and its subcommittees "provide a rich source for determination of the drafters' intent." *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980). We generally "assume in the absence of other legislative history that the Legislative Assembly accepted the Commission's explanations." *State v. Woodley*, 306 Or 458, 462, 760 P2d 884 (1988); *see Henderson*, 366 Or at 10 (stating the same); *see also State v. Carpenter*, 365 Or 488, 497 n 4, 446 P3d 1273 (2019) ("When evaluating statutes developed by the Criminal Law Revision Commission, we look to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws.").

The definition of "building" was first proposed and approved without discussion at a May 1968 subcommittee meeting; that definition is essentially identical to the definition currently found in ORS 164.205(1). Minutes, Criminal Law Revision Commission, Subcommittee No. 1, May 27, 1968, 7; Article 15, Preliminary Draft No. 1, Criminal Law

Revision Commission, May 1968.[2] That definition was briefly discussed at subsequent full Commission and subcommittee meetings. *See, e.g.*, Minutes, Criminal Law Revision Commission, July 19, 1968, 7 (where Commission Director Donald Paillette advised that the definition of "building" was "intended to cover structures of a nature that would be likely to have people in them for extended periods of time").

At a November 1970 subcommittee meeting, Judge Virgil Langtry—on behalf of the University of Oregon Alumni Association—raised the issue of sit-ins, suggesting that the statutory scheme encompassing burglary and criminal trespass could be utilized to terminate student or nonstudent disturbances on university property through the "unlawfully entering or remaining" requirement of criminal trespass. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Nov 19, 1970, Tape 22, Side 1 (statement of Judge Virgil Langtry); Minutes, Criminal Law Revision Commission, Subcommittee No. 1, Nov 19, 1970, 1-2. At that same meeting, Commission Director Paillette asked whether, for the purposes of unlawfully entering or remaining on premises, the draft should be made more specific with respect to offices within buildings, to reflect that a license to remain in one part of a building did not provide a license to go elsewhere in the building. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Nov 19, 1970, Tape 22, Side 2 (statement of Commission Director Donald Paillette); Minutes, Criminal Law Revision Commission, Subcommittee No. 1, Nov 19, 1970, 8. Commissioner Spaulding responded that that issue was already covered by the definition of "building" in subsection (1). Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Nov 19, 1970, Tape 22, Side 2 (statement of Commissioner Bruce Spaulding). That

---

[2] Preliminary Draft No. 1 proposed defining "building" for purposes of the offenses of burglary and criminal trespass as follows:

"(1) 'Building,' in addition to its ordinary meaning, includes any vehicle, boat, aircraft, or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices, or rented rooms, each unit is, in addition to being a part of such building, a separate building."

discussion suggests that entering or remaining in a university administrator's office located within a university building without authorization would be a criminal trespass under the intended definition of "premises," which included any "building and any real property, whether privately or publicly owned," because "building" includes all parts of a building.

The Commission ultimately approved the definition of "building." Minutes, Criminal Law Revision Commission, Dec 10, 1970, 3; *see also* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135, 143 (July 1970) (including the proposed definition of "building" within the statute without amendment). It noted that the "type of premises at which the amendments were aimed"—including amendments to the "unlawfully entering or remaining" and "premises" definitions—was intended to include the following:

> "[B]uildings such as the State Capitol, a university building or a county courthouse where the premises were open for certain purposes and the public was privileged to use them for those purposes, recognizing that certain portions of the premises were designed to be subjected to a usage different from other portions."

Minutes, Criminal Law Revision Commission, Dec 10, 1970, 2; Tape Recording, Criminal Law Revision Commission, Dec 10, 1970, Tape 2, Side 1 (statement of Commission Director Donald Paillette).

In addition, the Commission's commentary to the proposed code revision states that "building" was meant "to include those structures and vehicles which typically contain human beings for extended periods of time, in accordance with the original and basic rationale of the crime: protection against invasion of premises likely to terrorize occupants." Commentary § 135 at 143. That suggests an intent to expand the original crime of burglary to protect other spaces that could be invaded in such a way as to terrorize the occupants of those spaces in the same way that homes had been protected.

Moreover, including "offices" within the list of examples of "separate units" reflected the drafters' recognition

that invasion of an office violates the occupant's personal privacy, akin to the violation that follows from the invasion of a "separate apartment" or "rented room."[3] Including "offices" in the list of "separate units" that would be treated as separate buildings made it unnecessary to be more specific with respect to separate offices within a building, as Commission Director Paillette had suggested during the Commission's discussion about amending the definition of "enter or remain unlawfully." That legislative history suggests that the legislature understood that some buildings—including the State Capitol, a university building, or a courthouse—may be generally open to the public but may contain separate offices that are not open to the public.

The history further confirms that the legislature understood that offices within those buildings may be legally shared by the occupants and the state, county, or university that owned and controlled the building. For example, a legislator's office in the State Capitol—one of the buildings expressly mentioned in the legislative history—is physically separate from the common areas of the capitol building. The office and the capitol are legally owned by the state, but the office is "separate" from other parts of the capitol in that it is physically isolable from other parts, is used or occupied by a single person or discrete group of persons to the exclusion of others, is self-contained, and is distinct from other parts of the capitol. The legislative history, consistent with the statutory text and context, confirms that the legislature would have intended that a person entering a legislator's locked office in the capitol without authorization would commit a criminal trespass, and a person who entered without authorization with the intent to commit theft therein would commit a burglary. The person would commit those crimes even though the person may have been authorized to enter the capitol building and even though the legislator's office and the building itself are owned by the state.

---

[3] Although a person may also feel violated if someone enters their room without permission, the legislature chose to draw the line at "rented rooms"—not simply "rooms"—for purposes of the burglary statutes. ORS 164.205(1) ("separate units" includes, but is not limited to "separate apartments, offices or rented rooms"). Thus, violating someone's private space alone is not enough to constitute a burglary.

In sum, the legislature broadly defined the nature of the space that could be unlawfully invaded for purposes of the burglary and criminal trespass statutes to include entering or remaining in "separate units"—including "offices"—within a building. The statutory text, read in context and consistent with the legislative history, reveals that whether a space within a building was intended to be considered a "separate unit" within the building—and, thus, a "separate building"—for purposes of the burglary and criminal trespass statutes depends on the structure, occupancy, function, layout, and appearance of both the building as a whole and the space within the building.[4]

E.  *Application*

Having determined the intended meaning of "separate unit" within a "building," ORS 164.205(1), we return to the evidence in this case. Because this case comes to us on defendant's appeal of the trial court's denial of his motion for judgment of acquittal, we view the evidence in the light most favorable to the state. *Reed*, 339 Or at 243. As described above, the room that defendant entered was Room 307 within Waldschmidt Hall, a five-story building. The room had four walls and a door that automatically locked when closed. It was used as a workspace by a single person. It was separately numbered from other rooms in the building, and a plaque outside the door identified its user by name and title. It functioned as an office—one of the examples of

---

[4] Our interpretation of ORS 164.205(1) and what it requires is consistent with the Court of Appeals' previous construction of the definition of "building" in *Rodriguez*, 283 Or App at 540-43. In that case, the defendant was convicted of first-degree burglary, among other crimes, after taking a firearm and other property from his parents' locked bedroom in the house where the three of them lived. On appeal, the issue was whether the bedroom was a "separate unit" within the house. To resolve the issue, the court looked to the function, occupation, and physical characteristics of the house and bedroom.

Based on various considerations—including the court's conclusions that the bedroom had a function that was inseparable from the purpose of the house; that the occupation of the bedroom was not exclusive to the defendant's parents, and the defendant had permission to enter the room at certain times; and that the lock on the bedroom door did not change the overall nature or function of the bedroom in a way that made it a separate unit from the rest of the house—the court determined that the evidence "[did] not support a conclusion that the parents' bedroom operated as a standalone, self-contained unit from the rest of the house" and, therefore, the trial court had erred in denying the defendant's motion for judgment of acquittal. *Id.* at 543-44.

"separate units" specified in the statute—for the adminis-trator who typically occupied that room.

Based on that evidence, a reasonable trier of fact could find that Room 307 was a "separate unit" within Waldschmidt Hall.[5] That is, a factfinder could find that the room was "separate" from the building itself because it was physically isolable, was used as an office by one person, was a self-contained office workspace, and was visibly distinct from other areas. A reasonable trier of fact could also find that Room 307 was a "unit" within Waldschmidt Hall. That is, they could find that Room 307 had a "clearly definable separate existence" from other areas, that Waldschmidt Hall was organized into self-contained workspaces, and that Room 307 was such a workspace occupied by an administra-tor who used it as his office. Therefore, the trial court did not err in denying defendant's motion for judgment of acquittal on the second-degree burglary charge.

## IV.   CONCLUSION

We conclude that, for purposes of Oregon's burglary and criminal trespass statutes, whether a space within a building was intended to be considered a "separate unit" and, thus, a separate "building," ORS 164.205(1), depends on the structure, occupancy, function, layout, and appear-ance of both the building as a whole and the space within the building. Applying that definition, we further conclude that the room that defendant entered qualified as a "sep-arate unit" and thus a separate "building," and, therefore, that the trial court did not err when it denied defendant's motion for judgment of acquittal.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[5] A factfinder also might have concluded, after considering the required fac-tors, that the entire third floor of Waldschmidt Hall—not just Room 307—was a "separate unit." Because the state charged defendant with unlawfully entering one office—Room 307—we need not decide whether a person who has unlawfully entered separate offices in a portion of a single building that itself could be con-sidered a "separate unit" has committed one or multiple offenses.