264 June 11, 2025 No. 530

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JOHNSON MOBILE PARK, INC.,
dba Johnson Mobile Estates,
*Plaintiff-Respondent,*

*v.*

Tara SCHOFFSTALL
and all others,
*Defendant-Appellant.*

Clackamas County Circuit Court
24LT05395; A184089

Ulanda L. Watkins, Judge.

Argued and submitted April 10, 2025.

Ann Berryhill Witte argued the cause and filed the brief for appellant.

Mark L. Busch argued the cause and filed the brief for respondent.

Before Lagesen, Chief Judge, O'Connor, Judge, and Kistler, Senior Judge.

O'CONNOR, J.

Reversed.

**O'CONNOR, J.**

In this forcible entry and detainer (FED) proceeding, defendant (tenant) appeals a judgment awarding restitution of the premises to plaintiff, Johnson Mobile Park, Inc. (landlord). Tenant raises two assignments of error. Because it is dispositive, we write only to address tenant's first assignment, in which she contends that the trial court erred by denying her motion to dismiss the FED complaint. Specifically, tenant argues that the notice terminating her tenancy was invalid because it ambiguously described the date on which her tenancy terminated in violation of ORS 90.632 and ORS 90.160(1).[1] We agree that the termination notice was ambiguous and, therefore, invalid. The trial court erred by denying tenant's motion to dismiss. Accordingly, we reverse.

## FACTUAL BACKGROUND

The relevant facts are undisputed. In 2010, tenant purchased a manufactured home and began renting a space in a mobile home park owned by landlord. In February 2023, park managers inspected tenant's home and identified various areas in need of repair. On March 28, 2023, landlord mailed tenant a notice terminating her tenancy under ORS 90.632[2] due to the disrepair and deterioration of the exterior of her manufactured home. The notice provided that her tenancy would terminate "at 12:00 midnight (end of day) on May 31, 2023 ('correction deadline')" unless tenant completed 15 repairs listed in the notice.

---

[1] ORS 90.160(1) has been amended since landlord issued the termination notice at issue in this case. We refer to the current version of the statute in this opinion because the amendments do not affect our analysis.

[2] ORS 90.632 provides, in part:

"(1) A landlord may terminate a month-to-month or fixed term rental agreement and require the tenant to remove a manufactured dwelling or floating home from a facility, due to the physical condition of the exterior of the manufactured dwelling or floating home, only by complying with this section and ORS 105.100 to 105.168. A termination shall include removal of the dwelling or home.

"* * * * *

"(3) * * * [I]f the exterior of the tenant's dwelling or home is in disrepair or is deteriorated, a landlord may terminate a rental agreement and require the removal of a dwelling or home by giving to the tenant not less than 60 days' written notice before the date designated in the notice for termination."

On June 13, 2023, landlord mailed tenant a notice extending the correction deadline by 60 days to July 31, 2023. On November 10, 2023, landlord mailed tenant a notice extending the correction deadline by six months. The final notice provided that "the new deadline for you to complete the repairs listed in the 60-day notice will be extended to 12:00 midnight (end of day) on January 31, 2024."

In March 2024, landlord filed a residential eviction complaint, asserting that landlord was entitled to possession of the property after the expiration of a 60-day notice issued under ORS 90.632. Tenant's answer alleged that landlord's notice was defective under ORS 90.160(1) and ORS 90.632, denied that the notice stated good cause for termination, and denied that the violations were not timely cured. The case proceeded to trial. At the close of tenant's case, she moved to dismiss, arguing that the notices issued by landlord were ambiguous and, therefore, invalid because they identified "midnight (end of day)" as the time of termination. In tenant's view, the reference to "midnight" in the notice created ambiguity as to whether the tenancy ended on May 31st or June 1st. Tenant argued that the legislature sought to avoid that ambiguity by enacting ORS 90.160(1), which provides that notice periods "must be calculated by consecutive calendar days, not including the initial day of service, but including the last day until 11:59 p.m." Landlord responded that ORS 90.160(1) merely prescribed the method of calculating the time at which the tenancy terminated. In landlord's view, because "midnight (end of day)" necessarily includes the minute starting at 11:59 p.m., the notices were not defective. Further, landlord argued that the initial notice gave tenant 64 days to correct the violations identified in the notice, and therefore, tenant received more time to correct the violation than the statutory minimum of 63 days.[3] The trial court agreed with landlord, explaining that if the notice states midnight, "that's one minute past 11:59." The trial court denied the motion to dismiss and entered judgment in favor of landlord.

---

[3] Under ORS 90.632, tenant was entitled to 60 days' written notice of the termination. Because landlord served tenant by mail, tenant was entitled to an additional three days under ORS 90.155(2).

## STANDARD OF REVIEW

In reviewing the trial court's ruling on a tenant's motion to dismiss, "we review for legal error the court's determination that the notices of termination complied with" the governing statutes. *Ornduff v. Hobbs*, 273 Or App 169, 172, 359 P3d 331 (2015). Where that ruling hinges on a question of statutory interpretation, we review the trial court's construction of the disputed statute for legal error. *See Randall v. Valk*, 324 Or App 251, 254, 525 P3d 889 (2023).

## ANALYSIS

The statutes at issue in this case are part of the Oregon Residential Landlord Tenant Act (ORLTA). ORS 90.105. ORLTA was enacted to "clarify and restate the rights and obligations of tenants and landlords." *KKMH Properties, LLC v. Shire*, 373 Or 676, 687, ___ P3d ___ (2025) (internal quotation marks omitted). Resolving the parties' dispute requires us to interpret ORLTA to identify the legislature's intent by examining the text of the statutes in context and giving any legislative history the weight that we deem appropriate. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We consider cases from the Supreme Court and this court that interpret a statute as part of the text and context. *State v. Haley*, 371 Or 108, 120, 531 P3d 142 (2023).

ORLTA permits a landlord to terminate a rental agreement for a space at a manufactured home park due to the disrepair or deterioration of the exterior of a manufactured home. ORS 90.632. To terminate the tenancy, the landlord must provide the tenant with at least 60 days' written notice of the termination that satisfies certain requirements. ORS 90.632(3). The notice must identify a "date designated" for termination of the tenancy, describe the disrepair or deterioration that is the cause for termination, state that the tenant may avoid termination by remedying the disrepair within the notice period, and describe the necessary repairs. ORS 90.632(3), (5). If the tenant fails to cure within the notice period and remains in possession of the property, the landlord may file an FED action for return of possession. ORS 105.115.

To maintain an FED action, a landlord must serve the tenant with a termination notice that complies with the requirements in ORS 90.632. *See Hickey v. Scott*, 370 Or 97, 110, 515 P3d 368 (2022) (explaining that "there are two requirements that a landlord must establish to succeed on a claim for possession: (1) the landlord must have delivered a valid termination notice that complied with statutory requirements; and (2) the tenant then must have remained in possession of the premises after the expiration date specified in the notice"). The legislature requires "strict adherence" to the statutory requirements for a notice of termination to ensure that a tenant has "precise and accurate information" such that the tenant "does not have to guess as to the exact nature of the breach and can be prepared to defend against it." *Id.* at 110-11. In the FED action, if a tenant proves that the landlord failed to deliver a termination notice that includes the information required by statute, "the tenant will prevail," although "the landlord can continue to attempt to terminate the rental agreement by filing a new notice." *KKMH Properties, LLC*, 373 Or at 688.

Accordingly, a termination notice that ambiguously states the date designated for termination of a tenancy, as required under ORS 90.632, is invalid and subject to dismissal because it fails to provide precise and accurate information. *See Ostlund v. Hendricks*, 289 Or 543, 549, 615 P2d 327 (1980). For example, in *Ostlund*, the Supreme Court concluded that the landlord's failure to include a "designated date" for termination of the tenancy within a termination notice rendered the notice invalid. *Id.* In that case, the termination statute, *former* ORS 91.885 (1977), *repealed by* Or Laws 1979, ch 676, § 5, provided that the landlord could terminate the rental agreement for a mobile home space by "giving to the tenant not less than 30 days' notice in writing prior to the *date designated* in the notice for termination." *Ostlund*, 289 Or at 549 (internal quotation marks omitted; emphasis added). The notice stated that the landlord would commence legal proceedings against the tenant if she failed to correct violations of the rental agreement within 30 days of the tenant's receipt of the letter. *Id.* at 545. The notice did not include a date designated because it did not list a

calendar date for the termination. *Id.* at 549. That rendered the notice invalid. *Id.*

Similarly, in *Greenway v. Parlanti*, 245 Or App 144, 261 P3d 69 (2011), we concluded that a notice informing a tenant that their tenancy would terminate "twenty four (24) hours from the time of service upon you" was deficient under ORS 90.396(1), which permits a landlord to terminate a tenancy with 24 hours' notice when a tenant or someone in the tenant's control threatens to inflict substantial personal injury upon another person on the premises. *Id.* at 146-47, 150. We reasoned that ORS 90.396(1) "unambiguously requires service of a written notice that specifies, *i.e.*, names in a precise manner, *** the date and time of the termination;" therefore, "a written notice must explicitly include the actual date and time that the tenancy will terminate." *Id.* at 148-49 (internal quotation marks omitted). Because ORLTA permits service in a variety of ways, including by personal delivery and mail, as a practical matter, a notice that does not specify an exact time of termination could force the tenant "to guess as to when the tenancy terminates." *Id.* at 149. Because the notice failed to comply with the requirements of ORS 90.396(1), it was invalid, and we held that the trial court erred in entering the judgment against tenant. *Id.* at 151.

In summary, ORLTA requires a landlord to include precise and accurate information in termination notices provided to a tenant. *Hickey*, 370 Or at 111-12. When the legislature requires a landlord to provide notice of the "date designated" for termination, like the legislature has done in ORS 90.632(3), the notice must accurately and precisely identify the termination date. *Ostlund*, 289 Or at 549. A notice that vaguely or ambiguously identifies the termination date fails to precisely and accurately identify the termination date. *See Greenway*, 245 Or App at 150 (explaining that the legislature intended that termination notices "be specific concerning the date and time of the termination of the tenancy").

The parties dispute whether we should consider another provision of ORLTA, ORS 90.160(1), to determine whether the notice has precisely and accurately identified

the termination date in this case. Tenant argues that ORS 90.160(1) requires a termination notice to expressly state that the tenancy ends at 11:59 p.m. on the final day of the notice period. Landlord contends that the statute merely dictates the method of calculating a minimum notice period but does not require that the notice specify 11:59 p.m. as the pertinent deadline.

As relevant here, ORS 90.160(1) provides:

"For references in this chapter to periods or notices based on a number of days, those days must be calculated by consecutive calendar days, not including the initial day of service, but including the last day until 11:59 p.m."

Neither we nor the Supreme Court have interpreted that provision. The text does not require that a notice issued under ORLTA state that any period of days ends at 11:59 p.m. on the final day. The legislature required that the period "must be calculated" to include that last day until 11:59 p.m. It did not define the terms "calculate" or "including." However, both are words of common usage, and "we generally assume that the legislature intended to use the term in a manner consistent with its plain, natural, and ordinary meaning, and we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean." *State v. Meiser*, 372 Or 438, 451, 551 P3d 349 (2024) (internal quotation marks omitted). Webster's defines "calculate" as meaning "to ascertain or determine by mathematical processes esp[ecially] of some intricacy." *Webster's Third New Int'l Dictionary* 315 (unabridged ed 2002). It defines "including" as "serving to enclose or cover." *Id.* at 1143.

With those definitions in mind, the text of the statute establishes the process by which a landlord or tenant ascertains the end of any period of days contained within a notice issued under a provision of ORLTA. In determining that deadline, a person counts consecutive calendar days, with the first day beginning on the day after service. Importantly, the final day of the notice period encompasses the entire day until 11:59 p.m. Thus, the text of ORS 90.160(1) controls the computation of any notice period and prevents a landlord from terminating a tenancy earlier than 11:59 p.m. on the

final day of that period. *See* ORS 105.115(2)(b) ("A landlord may not file an action for the return of possession of a dwelling unit * * * until * * * after the expiration of the time period provided in a notice terminating the tenancy."). However, the text of ORS 90.160(1) does not, by itself, require a notice to state that the period ends at 11:59 p.m. on the final day.

We next consider the context of ORS 90.160(1), which includes the notice requirements established in the various termination statutes under ORLTA. *See Unger v. Rosenblum*, 362 Or 210, 221, 407 P3d 817 (2017) ("[W]e do not consider the meaning of a statute in a vacuum; rather, we consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole."). ORLTA contains provisions that permit a landlord to terminate a tenancy. Some of the termination provisions require the notice to state a "designated date" of termination, while others require that the termination notice specify both the "date and time" that the tenancy terminates. For example, to terminate a tenancy based a tenant's material violation of the rental agreement, ORS 90.392(3) requires the landlord to deliver a notice that "state[s] that the rental agreement will terminate upon a *designated date* not less than 30 days after delivery of the notice." (Emphasis added.) To terminate a tenancy based on a tenant's failure to pay rent, ORS 90.394(2)(a) and (3) require a landlord to deliver at least 10 days' written notice to the tenant that states "the *date and time* by which the tenant must pay the rent to cure." (Emphasis added.) That context suggests that the legislature used the phrase "date and time" when it intended a landlord to identify in the notice the clock time on a specific date when a notice period ends. When the legislature used "designated date," the legislature intended the landlord to include a calendar date (*e.g.*, May 31, 2023), and the legislature intended the date to be calculated using the method in ORS 90.160(1). *See State v. Stone*, 326 Or App 200, 208-09, 532 P3d 90, *adh'd to as modified on recons*, 328 Or App 203, 536 P3d 1094 (2023) ("Ordinarily, when the legislature uses different terms, we assume that the legislature intends those terms to have different meanings." (Internal quotation marks omitted.)).

The legislative history demonstrates that the legislature intended ORS 90.160(1) to clarify the precise time at which a notice period ends and to rid notices issued under ORLTA of the ambiguity that results from a "midnight" deadline. Previously, ORS 90.160(1) provided that a notice period based on days includes "the last day until the end of that day at 12 midnight." ORS 90.160(1) (2013), *amended by* Or Laws 2015, ch 388, § 1. But in 2015, the legislature amended ORS 90.160(1) to provide that a period based on days includes "the last day until 11:59 p.m." Or Laws 2015, ch 388, § 1.

That amendment was passed as part of a package of amendments to ORLTA recommended by a coalition work group consisting of landlord and tenant representatives and advocacy groups. *See generally* Or Laws 2015, ch 388. In written testimony from one of the coalition's primary representatives, the amendment to ORS 90.160 was described as a "change [to] the deadline for various acts to be 11:59 pm, for clarity and consistency." Testimony, Senate Committee on Judiciary, SB 390, Mar 24, 2015 (written statement of John VanLandingham, Lane County Legal Aid & Advocacy Center), https://olis.oregonlegislature.gov (accessed Apr 2, 2025). That history suggests that the legislature recognized the ambiguity that could result from a notice that identifies "end of that day at 12 midnight" as the time at which a tenancy terminates.

In sum, the text, context, and legislative history of ORS 90.160(1) demonstrate that the legislature did not intend that statute to require particular wording about time to be included in a notice. Some termination statutes in ORTLA do require particular wording about time, as we have described above. But, although ORS 90.160(1) controls the computation of a notice period contained within a termination notice issued under ORLTA, it does not by itself require a landlord to include the computation in a particular notice. Significantly for this case, ORS 90.160(1) also indicates the legislature's view that identifying a deadline as the end of final day at midnight creates confusion.

We note that others share that view, including the National Institute for Standards and Technology (NIST), the federal entity that establishes standards for measurement:

"When someone refers to 'midnight tonight' or 'midnight last night' the reference of time is obvious. However, if a date/time is referred to as 'at midnight on Friday, October 20th' the intention could be either midnight the beginning of the day or midnight at the end of the day.

"To avoid ambiguity, specification of an event as occurring on a particular day at 11:59 p.m. or 12:01 a.m. is a good idea, especially legal documents such as contracts and insurance policies. Another option would be to use 24-hour clock, using the designation of 0000 to refer to midnight at the beginning of a given day (or date) and 2400 to designate the end of a given day (or date)."

National Institute of Standards and Technology, Time and Frequency Division, *Times of Day FAQs*, https://www.nist.gov/pml/time-and-frequency-division/times-day-faqs (accessed Apr 18, 2025); *see also Chicago Manual of Style* 9.40 (18th ed 2024) (explaining that "though many people would consider 12:00 p.m. and 12:00 a.m. to refer to noon and midnight respectively—an assumption reinforced by electronic calendars—both of those forms are illogical and potentially ambiguous").

Returning to the case before us, ORS 90.632(3) required landlord to include the "designated date" that the tenancy would terminate if tenant did not make the repairs. The notice provided by landlord stated that the tenancy terminated "at 12:00 midnight (end of day) on May 31, 2023." The notice used the confusing wording that the legislature deleted from ORS 90.160(1). Tenant reasonably could have understood "12:00 midnight" to refer to 12:00 a.m., *i.e.*, the beginning of a new day, which directly conflicts with the parenthetical "(end of day)." To the extent that landlord included the "end of day" parenthetical to provide clarity, the 2015 change to ORS 90.160(1) communicates the legislature's view that identifying a period of days as ending at the end of the day at midnight creates confusion and ambiguity. The notice here created uncertainty as to whether the tenancy ended at 12:00 a.m. on May 31, 2023—that is, early in the morning on May 31—or 12:00 a.m. on June 1, 2023. It thus failed to precisely and accurately state a designated date of termination as required by ORS 90.632(3). Because the notice was invalid, landlord's FED action was subject to

dismissal. *Hickey*, 370 Or at 112 ("[A]n FED action based on an invalid termination notice is subject to dismissal, *i.e.*, the claim itself is invalid.").

Finally, we reject landlord's argument that the notice was valid because it provided tenant with more time to cure the violation than is statutorily required by ORS 90.632. Tenant does not argue that she received fewer days to remedy the violations than was statutorily required. Rather, tenant argues that notice is invalid because the date designated for termination was ambiguous. In fact, landlord's assertion that tenant was given 64 days to make the repairs identified in the notice rests on the assumption that the notice period ended at 12:00 a.m. on June 1. However, if tenant understood the notice period to conclude at 12:00 a.m. on May 31, that notice provided her a single minute beyond the statutory minimum period of 63 days. The trial court articulated those conflicting interpretations below. During argument on tenant's motion to dismiss, the trial court stated, "[b]ut [landlord's] argument is, I gave her an extra minute[,]" to which landlord's attorney responded, "I gave her an extra 24 hours and a minute[.]"

The notice is in violation of ORS 90.632, because the precise date on which the tenancy would end was ambiguous. The fact that the ambiguous notice, however interpreted, provided tenant more time than statutorily required does not cure the failure to specify the date designated for termination. A notice that fails to comply with the statutory requirement to specify the date designated for termination "fails to provide the precise and accurate information required" and "as a result, renders, the notice invalid." *Hickey*, 370 Or at 111-12. Because "*it is the particular notice*, and *not the violation*, that entitles a landlord to assert a claim for possession," an FED action "based on an invalid termination notice is subject to dismissal." *Id.* at 110, 112 (emphasis in original; internal quotation marks omitted). The trial court therefore erred in denying tenant's motion to dismiss.

Reversed.