No. 193          March 18, 2026          701

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

L. N. E. J.,
*Petitioner-Appellant,*

*v.*

LINO LOPEZ LUGO,
*Respondent-Respondent.*

Lane County Circuit Court
24SK05013; A186701

Bradley A. Cascagnette, Judge.

Submitted February 19, 2026.

Sara L. Mader, Kathryn M. Moakley, and Oregon Law Center filed the brief for appellant.

No appearance by respondent.

Before Tookey, Presiding Judge, Lagesen, Judge, and Kamins, Judge.

LAGESEN, C. J.

Reversed and remanded.

## LAGESEN, C. J.

Petitioner appeals an order denying her petition for a stalking protective order (SPO) pursuant to ORS 30.866. Petitioner sought the SPO against her housemate, and the trial court denied the petition based on its conclusion that contact between housemates in their shared home could not qualify as "unwanted" for purposes of ORS 30.866. The trial court's conclusion was incorrect; as petitioner points out on appeal, nothing in the text or context of ORS 30.866 allows for the conclusion that the legislature carved out a housemate exception for contact that otherwise would qualify as "unwanted" under ORS 30.866.[1] We therefore reverse.

In December 2024, petitioner petitioned for an SPO. She alleged that respondent had engaged in repeated and unwanted contact during 2024. Petitioner alleged that, "numerous times in 2024," respondent touched her multiple times in ways that were "inappropriate" and stared at her in a "sexually predatory way." Petitioner also alleged that, on October 14, 2024, respondent, who was drunk at the time, grabbed her wrists as she exited the bathroom in their shared home, threw her on the sofa, touched her breasts and crotch, told her he wanted her to "be his," and threatened her that she would "have problems" if she reported the incident to police. Petitioner further alleged that, a few days after that incident, on the night of October 18, 2024, respondent tried to open her locked bedroom door several times. Petitioner asserted that respondent knew or should have known that the contact was unwanted because she had told him not to touch her, kept her bedroom door locked so he could not come into her room, and did not consent to "any touching or sexual contact of any kind." Finally, petitioner alleged that those contacts, as well as threats made by third parties on respondent's behalf, caused her to be afraid for her physical safety.[2]

The trial court held an *ex parte* hearing on the SPO petition the day that petitioner filed it. The court questioned

---

[1] Respondent did not appear before the trial court or on appeal.

[2] Petitioner also reported the October 14, 2024, incident to police. Respondent was arrested and charged with first-degree sexual abuse and fourth-degree assault.

whether "roommates can receive a stalking order." Petitioner responded that "the statute is clear that the contacts have to be unwanted and that they need to alarm or coerce" and argued that she had met those requirements. Petitioner offered to research and brief the issue, which the court accepted, and petitioner asked the court if it was "just the roommate issue" that concerned the court. The court responded:

> "Well, yeah. I mean, they have an agreement to reside in the same place. So they have contact every day. Those are wanted contacts. And while they're having wanted contacts he—taking her at, in the light most favorable to her, assaulted her. And I get that that was unwanted, but it doesn't seem to be the true intent of stalking orders. She's the victim of a crime, but I'm not certain it qualifies under the stalking order statutes. Otherwise, we'd have every roommate who gets in a fight with their other roommate coming in here getting stalking orders. And I know that's different than her situation. I'm not trying to minimize anything that she was a victim of."

The court set another hearing, and petitioner filed her memorandum in which she argued, among other things, that "[t]he statute allowing for Stalking Protective Orders (SPO) does not require or exclude any specific relationship between petitioners and respondents." At the second hearing, the court denied the SPO petition. The court explained that it concluded that contacts that occur in a shared residence between housemates who have agreed to live together could not qualify as unwanted:

> "When two people agree to live together, they agree to have all sorts of contacts with one another in that living situation. So when you're agreeing to have contact, it presents a difficulty for the Court of that agreed contact becoming unwanted in the stalking order context.
>
> "I get that she doesn't want to be the victim of a crime, certainly not in her home. But I think it's very difficult for that contact to rise to the stalking order. That contact, I believe, could be used for something to explain her state of mind or fear related to other contacts that maybe occur outside that shared residence. But I don't believe it qualifies as an unwanted contact in the stalking order context. And I

can't find any case law that says it does. And the only case I found kind of and tells me that it doesn't."[3]

Petitioner appealed.

At issue is whether the trial court erred in concluding that contacts between housemates occurring within a shared residence do not, as a matter of law, qualify as unwanted contacts for purposes of an SPO. That is a question of statutory construction, which we review for legal error. *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or 23, 33, 529 P3d 939 (2023). In doing so, our task is "to give effect to the intent of the legislature as demonstrated by the text, context, and any helpful legislative history." *Id.* (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)).

ORS 30.866 governs civil stalking protective orders, providing in pertinent part:

"(1)   A petitioner may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a respondent if:

"(a)   The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;

"(b)   It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household.

"(2)   At the time the petition is filed, the court, upon a finding of probable cause based on the allegations in the petition, shall enter a temporary court's stalking protective order that may include, but is not limited to, all contact listed in ORS 163.730. The petition and the temporary order shall be served upon the respondent with an order requiring the respondent to personally appear before the

---

[3] The trial court did not cite the opinion on which it relied in concluding that contacts between housemates in a shared residence could not constitute unwanted contact under ORS 30.866.

court to show cause why the temporary order should not be continued for an indefinite period.

"(3)(a)  At the hearing, whether or not the respondent appears, the court may continue the hearing for up to 30 days or may proceed to enter a court's stalking protective order and take other action as provided in ORS 163.738.

"(b)  If respondent fails to appear after being served as required by subsection (2) of this section, the court may issue a warrant of arrest as provided in ORS 133.110 in order to ensure the appearance of the respondent in court."[4]

As relevant here, ORS 30.866(1) thus imposes three requirements for an SPO: (1) the respondent intentionally, knowingly or recklessly engaged in repeated and unwanted contact with petitioner; (2) it is objectively reasonable for someone in the petitioner's situation to be alarmed or coerced by the contact; and (3) the repeated unwanted contact causes the petitioner reasonable apprehension regarding their personal safety. ORS 30.866(2), in turn, authorizes the court to issue a temporary SPO if it finds probable cause based on the allegations in the petition. Subsection (3) allows the court to issue a permanent SPO after the respondent has been served with the SPO petition and had an opportunity to appear and challenge the petition.

In this case, the trial court did not evaluate whether petitioner's SPO petition established probable cause that the well-settled legal standards for issuing a temporary SPO were satisfied. *McGinnis-Aitken v. Bronson*, 235 Or App 189, 191, 230 P3d 935 (2010) ("The legal standards governing the issuance of an SPO are well settled."). Instead, the trial court concluded that none of the contacts that petitioner included in her petition could qualify as "unwanted" because respondent was her housemate and the contacts occurred in their shared home.

That construction of the statute is untenable as a matter of text and context.

---

[4] Subsections (4) through (12) of ORS 30.866 govern a petitioner's recovery of damages, costs, and fees; entry of an SPO against a minor; the two-year statute of limitations for petitioning for an SPO; the standard of proof; prohibition against charging filing, service, or hearing fees for an SPO proceeding; entry of an order prohibiting respondent from owning a firearm under federal law; service of SPOs; and use of a respondent's statements made at an SPO hearing.

Starting with text, nothing in ORS 30.866's terms imposes the limitation recognized by the trial court. The plain terms of the statute allow for the issuance of an SPO upon proof of repeated contacts that are not wanted and that otherwise meet the statutory standards, regardless of where those contacts occur or the nature of any preexisting relationship between the parties. In construing ORS 30.866 to exclude certain contacts between parties who share a home regardless of whether those contacts otherwise satisfy the statutory standards for an SPO, the trial court imposed additional requirements that the legislature did not include in the statute. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted * * *.").

Beyond that, context corroborates what the text makes plain. Context includes our case law construing ORS 30.866. *State v. Haley*, 371 Or 108, 112, 531 P3d 142 (2023) (explaining that statutory context includes case law construing statute); *State v. Guzman*, 366 Or 18, 25 n 2, 29, 455 P3d 485 (2019) (same).[5] And our case law makes clear that whether a contact is "unwanted" for purposes of ORS 30.866 turns simply on whether the recipient of the contact did not want it and does not turn categorically on where the contact occurred or the relationship between the parties. *B.R.B. v. Sweeney*, 336 Or App 203, 205, 561 P3d 173 (2024) (concluding that it was inferable from the nature of the conduct that the respondent's acts of throwing a bomb at the petitioner's house and attempting to run the petitioner over that the contacts were unwanted); *D.A. v. White*, 253 Or App 754, 764, 292 P3d 587 (2012) (although the SPO petitioner and the respondent were coworkers, contact qualified as unwanted where it was inferable "from petitioner's refusal to interact with respondent that he did not want any contact beyond the parties being present together in their shared workplace"); *Boyd v. Essin*, 170 Or App 509, 515, 12 P3d 1003 (2000),

---

[5] In *Guzman*, the Supreme Court explained that case law can operate as context for purposes of statutory construction in two different ways: (1) case law existing when the legislature enacted a statute can inform a court's understanding of an enactment; and (2) prior appellate decisions interpreting the statute provide context by virtue of their precedential effect. 366 Or at 25 n 2, 29.

*rev den*, 331 Or 674 (2001) (in the context of an SPO petition by a former wife against a former husband, former husband's assault of the parties' son qualified as unwanted contact, even though parties had not yet separated at the time).

We appreciate the trial court's concern that allowing a petitioner to obtain an SPO against a housemate with whom they have agreed to share a residence could result in housemates bringing their conflicts before the court. But that is not a concern that permits a court to deny an SPO to a person who otherwise demonstrates the requisite number of qualifying contacts. Rather than constituting an outright bar to obtaining an SPO, a petitioner and respondent's housemate relationship may provide contextual evidence relevant to determining whether a petitioner has satisfied the requirements of ORS 30.866(1), particularly in cases in which the question of whether the alleged contact was unwanted is much closer than in this case. *See D. W. C. v. Carter*, 261 Or App 133, 141, 323 P3d 348 (2014) ("[I]t is often necessary to view contacts in context in order to determine whether they give rise to objectively reasonable alarm.").

Accordingly, we reverse the order denying petitioner's SPO petition and remand for the trial court to evaluate whether the petition established probable cause for issuance of a temporary SPO.

Reversed and remanded.