Argued and submitted September 10, 2001, reversed and remanded with
instructions February 13, 2002

In the Matter of the Suspension of
the Driving Privileges of

KENNETH LEROY TEW,
*Respondent,*

*v.*

DRIVER & MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Appellant.*

00017; A111142

40 P3d 551

Daniel J. Casey, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Alan J. Schmeits argued the cause for respondent. With him on the brief was Silven, Schmeitz & Vaughan.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

The Driver and Motor Vehicles Services Branch of the Department of Transportation (DMV) appeals from a judgment setting aside its suspension of petitioner's driver's license because of his refusal to submit to a breath alcohol test. The trial court held that there was not substantial evidence to support the hearing officer's[1] order of suspension. We reverse and remand.

We take the facts from the hearing officer's order, supplemented as relevant to our decision with the evidence at the hearing. About 12:50 on the morning of November 20, 1999, Sergeant Gomez of the Baker City Police Department was standing on the sidewalk on the west side of Main Street in Baker City, approximately 200 feet north of where Washington Street crosses it, talking to a man who had been involved in a dispute with his girlfriend. Main Street has four traffic lanes. The traffic lights for the intersection of Main and Washington streets consist of one light above each of the four crosswalks. Gomez was looking east or slightly southeast while he talked with the man. Out of the corner of his eye, he noticed petitioner drive a pickup truck eastbound on Washington Street across Main Street. He testified that, when he first noticed the truck, the signal for movement on Washington Street was red, while the signal for movement on Main Street was green. When he first saw the truck, it was in the westernmost traffic lane of Main Street, about 15 or 20 feet into the intersection. Gomez did not see petitioner's truck actually enter the intersection.

After Gomez first saw the truck, it continued to the other side of the intersection but stopped before the crosswalk to let a number of boisterous "kids" cross.[2] The truck

---

[1] The hearing officer and the parties refer to the person who conducted the hearing as an "Administrative Law Judge." That was incorrect. The title "Administrative Law Judge" applies only to those who conduct hearings on behalf of the Workers' Compensation Board. *See, e.g.,* ORS 654.290; ORS 656.724. Every other person who conducts a hearing under ORS chapter 183 is a "hearing officer." *See* ORS 183.415; Or Laws 1999, ch 849, §§ 2-21, 214. Hearings under the Implied Consent Law generally follow the contested case procedures of chapter 183 and are before hearing officers assigned from the panel established under Oregon Laws 1999, chapter 849. ORS 813.410(4).

[2] The record does not indicate the age of the "kids."

then continued east on Washington Street. Gomez broke off his conversation, got into his patrol car, and followed the truck. He was able to turn left onto Washington Street while the light for movement on Main Street was still green. Gomez followed the truck for several blocks but saw no further infractions. He then stopped the truck because he believed it had run a red light at the intersection. After the stop, he developed evidence that led him to arrest petitioner for driving under the influence of intoxicants.[3] He drove petitioner to the police station and asked him to take a breath alcohol test. Petitioner refused. Gomez then gave petitioner a notice of intent to suspend his driver's license unless he sought a hearing within 30 days.

Petitioner requested a hearing in a timely manner. At the hearing, he testified that he was driving home after spending some time at a benefit at the Baker City Elks Club. In contrast to Gomez's testimony, he testified that the signal was green for movement on Washington Street at the time that he entered the intersection. He did not know what the signal showed while he waited for the "kids" to cross because it was almost directly above him at that point. Petitioner also testified that it would have been impossible for Gomez to have seen the signal light for Washington Street from where Gomez was standing. Derek Boyles, petitioner's friend, testified that, when petitioner drove into the intersection, he was standing on the southwest corner of the intersection, waiting for the pedestrian signal to change from "Don't Walk" to "Walk" so that he could cross Washington Street. He testified that the signal light for petitioner was green. He had also been at the Elks Club benefit; indeed, petitioner had promised to give Boyles a ride home, but he had left the Elks Club to look for his girlfriend. Boyles saw petitioner drive into the intersection. He said that at that time the pedestrian signal for crossing Washington Street still showed "Don't Walk." He watched petitioner go through the intersection, stop for the "kids," and continue on. Boyles paid particular attention because he was afraid that he would have to get another ride.

---

[3] Although petitioner argues otherwise, the record contains substantial evidence to support the hearing officer's conclusion that events after the stop gave Gomez probable cause to arrest petitioner for DUII.

The hearing officer left the record open in order to view the signal. She determined that her view was "inconclusive." In her order, she explained before she made her credibility findings and her findings of fact that, although she

"could not see the color of that light from the officer's position due to the covers on the side of the light, she notes [that] the view was conducted during daylight hours, whereas the stop occurred at night. The [hearing officer] is aware that at night the color of the light may often e point.[4] Thus, Officer Gomez could have seen [that] the light was red from the reflection, and could have concluded [that] it was red because the light directing the southbound traffic on Main Street was green."

The hearing officer treated the conflicting testimony concerning the color of the light controlling petitioner's movement as a credibility issue and held that Gomez was the more credible witness. She did not rely on the witnesses' demeanor for that determination but, rather, on other aspects of their testimony. She found that Gomez

"is a trained observer, who had the benefit of a written report to refresh his memory of the events leading up to the stop * * *. In addition, no evidence was introduced during the hearing, which would indicate [that] the officer had a specific interest in the outcome of the hearing or a motive to have such an interest."

In contrast, the hearing officer found that petitioner "was facing a license suspension for a significant period of time, as well as a potential criminal charge for DUII." In addition, she found that, at the time of the stop, he was less than truthful with Gomez about the amount of alcohol he had consumed. She pointed to his testimony at the hearing in that regard, where he admitted to having five drinks at the Elks Club instead of the "couple of beers" that he told the officer about at the scene. There was also evidence that petitioner was impaired due to his consumption of alcohol, thus affecting his ability to perceive and recall what happened, and some of his

---

[1] In its brief, the state treats "e point" as a typographical error, while in his brief petitioner sees it as a statement whose meaning is unclear. We do not need to determine what if any meaning the phrase has, as the hearing officer's conclusions are clear from her discussion as a whole.

testimony led the hearing officer to conclude that he was hostile towards the Baker City Police Department. Boyles also admitted having had at least five or six drinks, and he left the Elks Club without telling petitioner that he was leaving; to the hearing officer, that was forgetful behavior that indicated impairment. The hearing officer concluded that the "amount of alcohol consumed by Mr. Boyles renders his testimony unreliable regarding any events he witnessed after consuming the alcohol."

■    Based on her finding that Gomez was the more credible witness, the hearing officer held that he had probable cause to stop petitioner. The threshold issue on appeal is whether there is substantial evidence in the record to support her credibility findings. In deciding that issue, we review the hearing officer's order, not the circuit court's judgment. *Hayes v. MVD*, 113 Or App 655, 657, 833 P2d 1329 (1992); *Shakerin v. MVD*, 101 Or App 357, 790 P2d 1180 (1990).[5] Under ORS 813.450(4)(c), a court reviewing an implied consent case is to set aside or remand the DMV order if it "is not supported by substantial evidence in the record." We have treated substantial evidence under that statute as equivalent to the standard in ORS 183.482(8)(c), which provides that "substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *See Golliher v. DMV*, 173 Or App 586, 589-90, 22 P3d 780 (2001).

■    In *Younger v. City of Portland*, 305 Or 346, 353-57, 752 P2d 262 (1988), the Supreme Court explained that the "whole record" standard requires a reviewing court to take into account evidence that detracts from the administrative finding as well as evidence that supports it. " 'Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony.' " *Id.* at 355, quoting *Matter of Stork Restaurant, Inc. v. Boland*, 282 NY 256, 26 NE2d 247, 255 (1940). As we said shortly before *Younger* in explaining the same concept, if "an agency's finding is reasonable, keeping in mind the evidence

---

[5] As DMV correctly suggests, the circuit court's analysis appears to be based on a weighing of the evidence, a standard of review more appropriate to *de novo* review, even though it purported to conduct a substantial evidence review.

against the finding as well as the evidence supporting it, there is substantial evidence." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

▪▪▪ The hearing officer's task in this case was to reconcile the conflicting testimony of the witnesses and determine which evidence was more probably correct. Assessing the credibility of the various witnesses was an essential part of that task. A determination of credibility is one kind of fact finding, subject to review both for substantial evidence to support the finding of underlying facts and for substantial reason to explain how those facts lead to the ultimate conclusion of credibility. *See Dennis v. Employment Div.*, 302 Or 160, 168-69, 728 P2d 12 (1986) (discussing credibility findings); *Portland Assn Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 627, 16 P3d 1189 (2000) (explaining substantial reason and substantial evidence tests); *Koskela v. Willamette Industries, Inc.*, 159 Or App 229, 247-49, 978 P2d 1018 (1999), *rev'd on other grounds* 331 Or 362, 15 P3d 548 (2000) (treating credibility as a factual determination). A determination of a witness' credibility can be based on a number of factors other than the manner of testifying, including the inherent probability of the evidence, internal inconsistencies, whether or not the evidence is corroborated, and whether human experience demonstrates that the evidence is logically incredible. *See Lewis and Clark College v. Bureau of Labor*, 43 Or App 245, 256, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980) (Richardson, J., concurring in part, dissenting in part). We evaluate the hearing officer's determinations of credibility in that light.[6]

▪▪▪ There is substantial evidence and substantial reason to support the hearing officer's findings regarding Gomez's credibility. Gomez is a trained observer who made a contemporaneous written report. At the time that petitioner drove through the intersection, Gomez was facing in another direction and was talking with a third party. He saw petitioner and the status of the light only after petitioner was already in the intersection. At that time, the light facing him was green, which meant that the light controlling petitioner's movement

---

[6] Because the hearing officer did not rely on the witnesses' demeanor in determining credibility, all of the evidence on the credibility issue is in the record.

was more likely than not red or yellow at the time petitioner entered the intersection. In addition, the fact that Gomez was able to break off his conversation, get in his car, drive down the street, and turn left before the signal changed would suggest that the light turned red very shortly before he saw petitioner's truck.[7]

The hearing officer also based her credibility findings on her evaluations of petitioner and Boyles. She referred to petitioner's personal interest in the case as someone who was facing a license suspension and a potential criminal charge and emphasized that the consumption of alcohol affected the reliability of the testimony of both petitioner and Boyles. Petitioner's apparent animus against the Baker City police is also relevant to evaluating the accuracy of his testimony. In addition, alcohol consumption can affect a person's ability to perceive and remember. Thus, the hearing officer's use of those factors to discount petitioner's and Boyles's testimony is supported by substantial evidence.

■■■ An officer has authority under ORS 810.410(3)(b) to stop a person for the purpose of investigation, identification, and issuing a citation if the officer has probable cause to believe that the person committed a traffic infraction. What matters is that the events that the officer observed lead the officer to believe that an infraction has occurred; it is not necessary that the officer correctly identify the infraction. If the officer subjectively believes that the events that he or she observed constitute an infraction, and if that belief is objectively reasonable, the officer has authority to make the stop. *See State v. Matthews*, 320 Or 398, 403-04, 884 P2d 1224 (1994); *State v. Jackson*, 149 Or App 662, 665-66, 945 P2d 544 (1997). ORS 811.260(5) makes it unlawful for a driver to proceed into an intersection when the light is red.[8] Petitioner

---

[7] Gomez testified that he was relatively new to Baker City, that the length of the cycle for each traffic signal in the city was different, and that did not know the length of the cycle for the signal at Main and Washington.

[8] ORS 811.260(3) provides that a driver facing a yellow signal shall stop before entering the intersection, except that, "[i]f a driver cannot stop in safety, the driver may drive cautiously through the intersection." A violation of ORS 811.260(3) and (5) is a Class B traffic infraction. ORS 811.265. Petitioner does not contend that he was unable to stop safely because the light was yellow when he entered the intersection.

maintains that the light was green. Because substantial evidence supports the hearing officer's findings rejecting his and Boyles's testimony and accepting Gomez's testimony as credible, the next question is whether Gomez's testimony supports a legal conclusion of probable cause to believe a traffic infraction occurred. We hold that Gomez's observation that the light facing him was green at the time that he observed petitioner's vehicle and the reasonable inferences that flow from that observation about the color of the light controlling petitioner's movement into the intersection form the basis for probable cause to believe that a violation of ORS 811.260 occurred. Accordingly, we disagree with the trial court that there is not substantial evidence to support the suspension of petitioner's driver's license.

Reversed and remanded with instructions to affirm order of suspension.