Argued and submitted June 3, 2005, reversed and remanded with instructions to reinstate order suspending driving privileges March 15, 2006

In the Matter of the Suspension of
the Driving Privileges of

Pavel Maxim EFIMOFF,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE SERVICES
BRANCH OF THE OREGON DEPARTMENT
OF TRANSPORTATION (DMV),
*Appellant.*

03C-13919; A122418

131 P3d 814

Bethany Cunningham, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Thomas D. Cobb, Assistant Attorney General.

Kenneth E. Kahn II argued the cause for respondent. With him on the brief was Kahn & Ifversen, Attorneys, L.L.P.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

ORTEGA, J.

---

* Haselton, J., *vice* Ceniceros, S. J.

## ORTEGA, J.

■      Respondent Driver and Motor Vehicle Services (DMV) appeals a circuit court judgment that reversed the Department of Transportation's final order suspending petitioner's driving privileges. The issue before us is the validity of a police officer's stop, under ORS 810.410(3)(b), when the officer observed petitioner commit a traffic violation and stopped him with the intention of talking about the violation rather than with a specific intention to issue a citation. On appeal, we review the agency's order, not the judgment of the circuit court. *Tew v. DMV*, 179 Or App 443, 448, 40 P3d 551 (2002). We review for substantial evidence and errors of law. ORS 813.450(4), (5). Concluding that the stop was valid, we reverse the circuit court judgment and remand with instructions to reinstate the suspension order.

No error is assigned to the findings of fact contained in the final order of the administrative law judge (ALJ), and we take the following description of the relevant facts from that order. During early morning hours, a police officer saw petitioner's vehicle parked illegally, protruding into a traffic lane and parked at an angle on a street where only parallel parking is allowed. When petitioner started to pull out, he leaned out the window and told the officer that he was just leaving. Intending to talk with petitioner rather than issue a citation, the officer asked him to pull over so that they could talk. Rather than pull over, petitioner kept driving. The officer turned on his overhead lights, and petitioner stopped in the traffic lane.

The officer spoke with petitioner, who seemed disoriented. His speech was thick and slurred; he stated that the last thing he remembered was doing laundry and that he had just woken up. He thought he was in Gervais, although he actually was in The Dalles. The officer believed that, more likely than not, petitioner was driving under the influence of a controlled substance. When the officer asked petitioner to step out of the car, petitioner was unsteady on his feet. At the officer's request, petitioner did some field sobriety tests but made several mistakes. The officer then arrested petitioner

for driving while under the influence of intoxicants (DUII) in violation of ORS 813.010.

After the arrest, the officer informed petitioner of the rights and consequences of refusal to take a chemical breath test and then requested that he take the test. Petitioner asked to first speak with an attorney and made telephone calls for 45 minutes in an effort, without success, to contact an attorney. He stated that he would not take a breath test without first speaking to his attorney and was served with a notice of suspension of his driver's license and opportunity for a hearing.

After the hearing, the ALJ concluded that the suspension of petitioner's license was valid. She decided that the stop was lawful because, "once the officer observed the [parking violations,] he was authorized to stop [p]etitioner, regardless of his intent to talk to [p]etitioner rather than issue a citation." On judicial review, the circuit court reversed the ALJ's order, and DMV appealed to this court.

On appeal, the question is whether the stop was valid under ORS 810.410(3)(b). Petitioner argues, first, that the stop was not authorized by the statute and, second, that the stop therefore had to meet constitutional standards of reasonable suspicion, which it failed to do. Because we disagree with petitioner's first argument, we do not reach the second.

This case presents an issue of statutory construction, so we follow the familiar methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). To determine the legislature's intent, we examine the statute's text in context, including other provisions of the same and related statutes. *Id.* at 610-11. If the legislative intent is unambiguous, we stop at that first level of analysis. *Id.* at 611. Here, ORS 810.410(3)(b) is unambiguous as it applies to petitioner.

ORS 810.410(3)(b) provides that a police officer "[m]ay stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation." Petitioner contends that, to be authorized under the statute, any stop and

investigation must be reasonably related to all three subjects named in the statute—the traffic violation, identification, and the issuance of a citation. Petitioner does not dispute that the stop, even with the limited purpose of talking about a parking violation, was "for the purposes of investigation reasonably related to the traffic violation." He also concedes that if the officer had intended to issue a citation, the stop would have been valid. He argues, however, that, because the officer did not intend to issue a citation when he stopped petitioner, the stop was not authorized by ORS 810.410(3)(b).

■ As noted, ORS 810.410(3)(b) provides that a police officer "[m]ay stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation." By using the word "may," the legislature indicated that it was authorizing actions, not requiring them.[1] *See Nibler v. Dept. of Transportation*, 338 Or 19, 26-27, 105 P3d 360 (2005) ("[T]he word 'may' ordinarily denotes permission or the authority to do something."). The remainder of the paragraph addresses the reasons that an officer is authorized to make a stop: "for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation." The question is whether, by authorizing an officer to make stops for those purposes, the legislature meant to require an officer to have all such purposes before making a stop. The text of the statute, related statutes, and case law lead us to conclude that the legislature did not have that intention.

We begin with the text of ORS 810.410(3)(b). The legislature's use of the permissive word "may" suggests that it was listing reasons that an officer is authorized to make a

---

[1] By enacting ORS 810.410(3), the legislature intended

"to keep traffic infractions decriminalized and to reduce the attendant law enforcement methods as much as necessary to accomplish that goal. * * * ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction."

*State v. Porter*, 312 Or 112, 119-20, 817 P2d 1306 (1991). In 1997, the legislature added paragraphs to ORS 810.410(3) to expand the authority of a police officer who makes a valid traffic stop. *See State v. Amaya*, 336 Or 616, 623, 89 P3d 1163 (2004) (addressing ORS 810.410(3)(c), (d)).

stop, not mandating that an officer must have all of those reasons. *Cf. Lee v. Oregon Racing Commission*, 142 Or App 114, 119-20, 920 P2d 554, *rev den*, 324 Or 394 (1996) (the statute providing that a commission may revoke or suspend a license allowed the commission to both revoke and suspend; the statutory language was "authorizing in nature, not limiting"). Ordinarily, when one is permitted to do something for several reasons, one is not required to have all of those reasons. For example, we have previously concluded that the use of the word "and" in Article I, section 9, of the Oregon Constitution and a related statute (stating that warrants must particularly describe the object of the search *and* the items to be seized) does not "imply a requirement that a search warrant can only be issued both to search for *and to seize* items. Rather, that language simply reflects that, where the warrant addresses both search and seizure, it must specify what is to be searched and what is to be seized." *State v. Carter*, 200 Or App 262, 267, 113 P3d 969 (2005), *rev allowed*, 340 Or 106 (2006) (emphasis in original). The text here thus supports the conclusion that ORS 810.410(3)(b) authorizes stops for several purposes but does not require the officer to have all such purposes.

Moreover, petitioner's contrary construction of ORS 810.410(3)(b) is inconsistent with other provisions of ORS 810.410, as interpreted by the Supreme Court. Interpreting ORS 810.410(3)(d), which provides that a police officer "[m]ay make an inquiry to ensure the safety of the officer, the person stopped or other persons present, including an inquiry regarding the presence of weapons[,]" the court rejected an argument that an officer did not comply with that paragraph because he failed to ask specifically about weapons, "because the statute does not limit permissible questions to those specifically asking about weapons but, instead, authorizes 'an inquiry to ensure the safety of the officer, the person stopped or other persons present.'" *State v. Amaya*, 336 Or 616, 624, 89 P3d 1163 (2004) (emphasis omitted). ORS 810.410(3)(b) likewise authorizes an officer to stop a person for certain purposes; it does not limit stops to circumstances in which the officer has all such purposes.

Certainly, if the legislature had intended to require a police officer to have all the purposes listed in ORS

810.410(3)(b), it knew how to write such a requirement. For example, ORS 813.132, also contained in the Vehicle Code, provides, in part, "[e]xcept as otherwise provided in this section, a refusal to take a urine test requested under ORS 813.131 *shall* be treated *for all purposes* as a refusal to take a breath test." (Emphasis added.) That statutory context suggests that the legislature deliberately chose not to impose a similar requirement (that all the listed purposes be present) in ORS 810.410(3)(b). Under petitioner's construction of ORS 810.410(3)(b), however, a police officer would lack authorization to stop a person without having all the purposes listed in the statute. Indeed, an officer could never stop a person whose name the officer already knew since, knowing the person's identity, the officer would not have a purpose of "investigation reasonably related to * * * identification * * *."

ORS 810.410(3)(b) permits a police officer to make a traffic stop for certain purposes; it does not require an officer to have all such purposes. Because the officer in this case stopped petitioner to investigate a traffic violation, his intentions regarding issuance of a citation are unimportant.[2] The stop, therefore, was valid.

Reversed and remanded with instructions to reinstate order suspending driving privileges.

---

[2] We note that there are questions about whether the parties properly preserved and presented questions about whether the officer specifically intended not to cite petitioner or merely had not yet formed an intention to cite petitioner. This case presents a question of statutory interpretation that ultimately is not affected by the officer's intentions regarding issuance of a citation. Accordingly, we do not address the potential preservation problem because it does not affect the outcome of the case.