34 July 31, 2024 No. 518

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SAMANTHA KELLY YOCOM,
*Defendant-Appellant.*

Lane County Circuit Court
20CR66634; A177722

Kamala H. Shugar, Judge.

Argued and submitted August 21, 2023.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment convicting her of misdemeanor driving while suspended, ORS 811.175 and ORS 811.182(4), raising three assignments of error. First, defendant challenges the trial court's denial of her motion to suppress evidence, arguing that *former* ORS 802.093 (2021), *repealed by* Or Laws 2022, ch 25, § 3, which created a temporary moratorium on issuing citations for certain traffic offenses under limited circumstances, rendered any stop to investigate such an offense unlawful. Second, she argues that the trial court erred in overruling her hearsay objection and admitting a copy of a Department of Motor Vehicles (DMV) report as a business record at trial. Third, she argues that the trial court plainly erred in failing to exercise discretion to suspend a mandatory fine.

We reject defendant's first assignment of error because we conclude that the moratorium on issuing citations for certain traffic offenses in *former* ORS 802.093 (2021) did not affect law enforcement officers' statutory or constitutional authority to stop and investigate those offenses. We reject defendant's second assignment of error because we conclude that the trial court did not err in overruling defendant's hearsay objection and admitting her DMV driver record to prove that defendant's license was suspended for driving under the influence of intoxicants (DUII) at the time she was stopped. We also reject defendant's third assignment of error because the record shows that defendant preserved her argument that the court should suspend execution of the mandatory fine and that the trial court exercised its discretion not to suspend it. We therefore affirm.

## MOTION TO SUPPRESS

"We review a trial court's denial of a motion to suppress for legal error and are bound by the court's explicit and implicit factual findings if evidence in the record supports them." *State v. Stevens*, 329 Or App 118, 120, 540 P3d 50 (2023), *rev den*, 372 Or 437 (2024). The relevant facts are few and undisputed. While on patrol in November 2020, a Lane County deputy sheriff stopped defendant for driving a car with registration stickers that had expired in 2019.

*See* ORS 803.560(1)(b) ("A person commits the offense of improper display of validating stickers if the person owns or drives a vehicle on which the display of registration stickers provides proof of valid registration and * * * [t]he stickers are displayed on the vehicle after the registration period shown on the stickers."). The deputy was aware that the legislature had instituted a moratorium on citations for that traffic violation, but he believed he had probable cause to stop defendant. The deputy approached defendant and asked for her license, registration, and proof of insurance. Defendant said that she did not have a license, that she should not be driving, and that she had just purchased the car. Defendant produced the car's title, which was still in another person's name, and a bill of sale signing the title over to her. The deputy asked dispatch to run a records check on defendant and learned that her license was suspended "at the misdemeanor level." The deputy cited defendant for driving while suspended but did not cite her for the traffic violation.

Defendant moved to suppress all evidence obtained from the traffic stop under Article I, section 9, of the Oregon Constitution. She argued that the deputy lacked probable cause to believe that she had committed a traffic violation under *former* ORS 802.093 (2021),[1] which provided, in relevant part:

"(1)  As used in this section, 'document or credential' includes but is not limited to documents or credentials issued or accepted by the Department of Transportation such as vehicle registration, registration stickers, driving privileges, declaration of weight, disabled person parking permits, trip permits, driver licenses and driver permits.

"(2)  Notwithstanding any other provision of law, a police officer may not issue a citation for a traffic offense based upon a document or credential that expired or a document that was not submitted to the department during the period beginning on March 1, 2020, and ending on December 31, 2020. This subsection applies to the following offenses:

---

[1]  At the time of the suppression hearing, the parties referred to *former* ORS 802.093 (2021) by its enabling legislation, SB 1601 (2020), which became effective upon passage on July 7, 2020. *See* Or Laws 2020, ch 15, §§ 20-23 (Spec Sess). For ease of reference, we refer to the codified version of the bill throughout this opinion.

"* * * * *

"(j)   Improper display of validating stickers under ORS 803.560.

"* * * * *

"(3)   If a police officer issues a citation in violation of subsection (2) of this section, the court shall dismiss the charge."

In her motion, defendant argued that *former* ORS 802.093 (2021) "created a moratorium on the issuance of citations for driving with expired tags," which "effectively legalized" certain traffic offenses upon "the recognition that the COVID-19 related closures of DMV offices made updating this type of information difficult." At the suppression hearing, defendant further argued that the deputy lacked probable cause to stop her for driving with expired tags "because th[at] violation did not exist for [defendant] at the time of that police contact," and it was therefore unlawful for the deputy "to both stop [defendant] and investigate that offense."

The trial court denied the motion. First, the court observed that the text of the statute was ambiguous as to whether the date range—March through December 2020—referred to the time when a police officer could not issue a citation for certain traffic offenses, or to the time when the documents and credentials had expired or were not submitted. But the court concluded that the legislature intended the latter construction, in part because of the placement of that restriction at the end of the sentence instead of at the beginning. The court further concluded that, even if the statute applied to the traffic stop of defendant in November 2020 for tags that had expired in 2019, the stop was nonetheless supported by probable cause:

"[R]egardless of whether it modifies one part of the sentence or the other, the restriction is on issuing a citation. The legislature is aware of the importance of its choice of words and they did not prohibit a police officer from stopping a vehicle, which they could have done.

"They did not prohibit a police officer from warning a person, which they could have done. Instead, they restricted a law enforcement officer from issuing a citation. So I—I

think it's my finding that it was a lawful stop. There was probable cause."

Article I, section 9, establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A traffic stop is a type of seizure. *State v. Civil*, 328 Or App 662, 668, 539 P3d 317 (2023), *rev den*, 372 Or 156 (2024). "To conduct a stop for a traffic violation, Article I, section 9, requires that an officer have probable cause to believe that a violation occurred." *State v. Sullivan*, 322 Or App 563, 565, 520 P3d 911 (2022), *rev den*, 370 Or 827 (2023). Probable cause exists where an officer subjectively believes that it is more likely than not that an offense occurred and where that belief is objectively reasonable. *Id.*

On appeal, we understand defendant to challenge the objective component of probable cause. She argues that *former* ORS 802.093 (2021) barred officers from issuing citations for certain traffic offenses between March and December 2020 based on documents or credentials that were expired or were not submitted, regardless of when those documents or credentials had expired or were not submitted. From that premise, defendant argues that her "expired tags did not constitute a traffic offense" when the deputy stopped her in November 2020, so the deputy lacked probable cause to initiate the stop. Alternatively, defendant contends that "even if probable cause can exist for a traffic 'offense' that is entirely unenforceable, such probable cause could not constitutionally justify a traffic stop" because the stop "serves no purpose relating to the grounds that purportedly justify it" and the seizure was therefore "unreasonable."

The state responds that *former* ORS 802.093 (2021) barred officers from issuing citations for certain traffic offenses based on documents or credentials that had expired or were not submitted between March and December 2020 and that the moratorium did not apply to defendant, whose tags had expired in 2019. Alternatively, the state argues that even if *former* ORS 802.093 (2021) did apply to defendant, it did not effectuate a repeal of the traffic offense for which defendant was seized, but only restricted an officer's authority to issue a citation. In the state's view, even if the deputy

could not cite defendant for that offense, the deputy had probable cause to initiate a traffic stop and to investigate the violation, during which the deputy could give a warning and information on the duration of the citation moratorium.

The parties' arguments require that we employ our well-established methodology to ascertain the legislature's intent in enacting *former* ORS 802.093 (2021). *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In doing so, we need not resolve the patent ambiguity in the statute's text because, even if defendant is correct that *former* ORS 802.093 (2021) applies to a traffic stop initiated in November 2020 for tags that had expired in 2019, we agree with the trial court and the state that the stop here was supported by probable cause. As explained below, the statute's express restriction on police authority to issue citations for certain traffic offenses did not affect the deputy's statutory and constitutional authority to stop and investigate those offenses based on probable cause that a violation had occurred.

We begin with the text of the statute in context, which is the best evidence of the legislature's intent. *Id.* at 171. As noted, *former* ORS 802.093(2) (2021) begins: "Notwithstanding any other provision of law, *a police officer may not issue a citation for a traffic offense*" based on expired or unsubmitted documents or credentials. (Emphasis added.) We agree with defendant that the phrase "notwithstanding any other provision of law" means that the terms of *former* ORS 802.093 (2021) "prevailed over any other provision of law." *Engweiler v. Board of Parole*, 343 Or 536, 544, 175 P3d 408 (2007) ("The function of a 'notwithstanding' clause is straightforward. It operates as an exception to whatever follows."); *Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993) (explaining that a "notwithstanding" clause functions "to make the statute an exception to the provisions of law referenced in the clause"). However, we disagree that the terms of *former* ORS 802.093 (2021) operated to temporarily repeal the enumerated traffic offenses based on expired or unsubmitted documents or credentials.

In our view, the statute was directed to police officers, specifically to "not issue a citation for a traffic offense," notwithstanding any other provision of law that authorized

them to do so; it did not direct a temporary repeal of any traffic offense. Indeed, subsection (2)'s references to "a traffic offense" and "the following offenses" in the present tense suggests that each enumerated traffic offense continued to have legal effect throughout the moratorium on issuing citations. And because the statute conditioned the restriction on issuing a citation to circumstances when documents or credentials had expired or were not submitted, the offenses necessarily remained citable when those circumstances were not present. Aside from the restriction on issuing a citation when those circumstances did exist, subsection (2) did not otherwise limit a police officer's authority, either expressly or by implication.

Subsection (3) confirms that the scope of the moratorium was on law enforcement officers' authority to issue a citation. That subsection provided a remedy "if a police officer issues a citation in violation of subsection (2)" by directing the court to "dismiss the charge." Notably, subsection (3) did not identify the violation as stopping or investigating a person for a traffic offense, nor did it provide a suppression remedy for stopping or investigating a person for such an offense.

In sum, we see nothing in the statutory text that suggests an intent to repeal any traffic offenses. The focus of subsections (2) and (3) was on limiting an officer's authority, but only to issue citations for certain traffic offenses and only in limited circumstances.

Our understanding of *former* ORS 802.093 (2021) is consistent with the statute governing police authority to investigate and enforce traffic violations. *See State v. Haley*, 371 Or 108, 112, 531 P3d 142 (2023) ("Context includes other provisions of the same statute and other related statutes."). ORS 810.410 "authorizes certain police conduct when a police officer makes a valid traffic stop." *State v. Amaya*, 336 Or 616, 622, 89 P3d 1163 (2004). That statute provides, in relevant part:

"(2)   A police officer may issue a citation to a person for a traffic violation at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act:

"(a)   When the traffic violation is committed in the police officer's presence;

"* * * * *

"(3)   A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation."

We have held that ORS 810.410(3)(b) authorizes a police officer to conduct a traffic stop for *any* of the enumerated purposes and does not require an officer to make a traffic stop for *all* of those purposes. *Efimoff v. DMV*, 204 Or App 648, 654, 131 P3d 814 (2006) ("ORS 810.410(3)(b) permits a police officer to make a traffic stop for certain purposes; it does not require an officer to have all such purposes."). In *Efimoff*, the issue before us was whether ORS 810.410 authorized an officer to stop the petitioner when the officer observed the petitioner commit a traffic violation and stopped him with the intention of talking about, rather than issuing a citation for, the violation. *Id.* at 650-51. The petitioner argued that ORS 810.410(3)(b) authorizes police to conduct a stop and an investigation for a traffic violation only if the stop and investigation are reasonably related to all three enumerated purposes: the traffic violation, identification, and the issuance of a citation. 204 Or App at 651-52. We rejected that argument as inconsistent with the text of the statute, other provisions of ORS 810.410, and case law and concluded that "ORS 810.410(3)(b) * * * authorizes an officer to stop a person for certain purposes; it does not limit stops to circumstances in which the officer has all such purposes." 204 Or App at 653.

Viewed against that statutory context, *former* ORS 802.093 (2021) operated to temporarily supersede an officer's authority under ORS 810.410(2) to issue citations for the specified traffic offenses under certain circumstances. But it did not affect an officer's authority under ORS 810.410(3)(b) to "stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation[ and] identification" of the person. Put another

way, ORS 810.410(2) authorizes police to issue a citation for a traffic violation that is independent of the authority in ORS 810.410(3) to stop a person for certain purposes; *former* ORS 802.093 (2021) temporarily superseded an officer's authority to issue a citation for the enumerated traffic offenses without disturbing their authority to stop and investigate those offenses. Further, *Efimoff* made clear that the purposes for which an officer may stop a person for a traffic violation under ORS 810.410(3) are also independent of each other; as long as the officer has one purpose, the stop is lawful at the outset. It follows that ORS 810.410(3)(b) authorizes police to stop a person for a traffic violation and investigate the violation even when the officer is not authorized to issue a citation.

Defendant attempts to distinguish *Efimoff* by arguing that "where the officer's decision to issue a citation may depend on what an investigation of the offense discloses, the stop and investigation serve clear purposes," whereas when an officer cannot lawfully issue a citation, "it is difficult to see how such a seizure could be anything other than a fishing expedition for unrelated criminal activity that runs afoul of Article I, section 9." We are unpersuaded. In our view, because *former* ORS 802.093 (2021) did not preclude officers from issuing citations for the enumerated traffic offenses in all circumstances, an officer's authority to issue a citation may have depended on what an investigation of the offense disclosed. In those circumstances, defendant acknowledges, and we agree, that a stop and investigation serve clear purposes. For example, here, although the deputy initially had reason to believe that defendant's tags had expired in 2019, the deputy learned that defendant had recently purchased the vehicle but had not yet submitted the signed title and bill of sale to the DMV to register it in her name. Thus, it is difficult for us to see how a stop to investigate a traffic offense enumerated in *former* ORS 802.093 (2021) would necessarily constitute a pretext to explore unrelated criminal activity.[2]

With that understanding of *former* ORS 802.093 (2021), we readily conclude that the trial court correctly denied defendant's motion to suppress. Even if *former* ORS

---

[2] We note that defendant only challenges the lawfulness of initiating the stop and does not additionally argue that the officer unlawfully extended the duration or subject matter of the stop.

802.093 (2021) precluded the deputy from issuing defendant a citation for violating ORS 803.560, the deputy's belief that defendant had committed a traffic violation was objectively reasonable. *See* ORS 801.557 ("'Traffic violation' means a traffic offense that is designated as a traffic violation in the statute defining the offense, or any other offense defined in the Oregon Vehicle Code that is punishable by a fine but that is not punishable by a term of imprisonment."); ORS 801.555(2) ("'Traffic offense' means *** [a]ny provision of law for which a criminal or traffic violation penalty is provided in the vehicle code."); ORS 803.560(4) ("The offense described in this section, improper display of validating stickers, is a Class D traffic violation."). The deputy therefore had probable cause to justify conducting a traffic stop to investigate the violation and identify defendant under ORS 810.410(3) and Article I, section 9. *State v. Arreola-Botello*, 365 Or 695, 709, 451 P3d 939 (2019) ("Article I, section 9, permits brief traffic stops to investigate unlawful, noncriminal activity when the stops are of limited scope."); *State v. Watson*, 353 Or 768, 775, 305 P3d 94 (2013) (explaining that the traffic stop of the defendant "was lawful at its inception" because the officer "had probable cause to believe that [the] defendant had committed a noncriminal traffic violation" and "Article I, section 9, permitted [the officer] to stop and detain [the] defendant briefly for purposes of investigation" (footnote omitted)); *State v. Rodgers/Kirkeby*, 347 Or 610, 623, 227 P3d 695 (2010) ("Police authority to perform a traffic stop arises out of the facts that created probable cause to believe that there has been unlawful, noncriminal activity, *viz.*, a traffic infraction."). The trial court did not err.

## HEARSAY OBJECTION

We turn to defendant's second assignment of error, which challenges the trial court's ruling on her hearsay objection to Exhibit 2, a certified copy of defendant's DMV driver record. We review a trial court's evidentiary ruling in light of the record that was before the court at the time of the ruling. *State v. Eatinger*, 298 Or App 630, 632, 448 P3d 636 (2019).

After the trial court denied the motion to suppress, the parties proceeded to a bench trial. When the prosecutor

offered Exhibit 2, defendant objected on hearsay grounds. The prosecutor responded that the document was "self-authenticating" under OEC 902, the court rejoined that it was also a business record, and defendant replied that the state needed to lay a foundation for its admission. The prosecutor clarified that he intended to call Schilt from the DMV to "explain" the document but maintained that the state was not required to lay a foundation for the document for it to be admissible.

Schilt testified that she works at the Eugene DMV as a transportation services representative and commercial driver's license examiner; that she works with the public issuing driver's licenses, titles, and registration renewals; and that she runs the office in a lead position. Her duties include accessing driver records and interpreting them. According to Schilt, DMV keeps records of when a person's license is suspended and records of the time period and reason for those suspensions in the normal course of business, and those records are made "immediately at the time [DMV] receive[s] the information."

Schilt testified that Exhibit 2 "is a certified court print" that "shows issuance history, any accidents, convictions, any restraints, which would be *** the DMV's suspensions." Schilt further testified that Exhibit 2 was DMV's driver record for defendant and that it showed that defendant's license was suspended from August 2020 to August 2023 as a result of a DUII conviction. Finally, Schilt testified that when DMV "receives notice that someone's been convicted of a DUII, *** they automatically suspend their license."

The prosecutor again offered Exhibit 2, and defendant again objected on hearsay grounds. In aid of the objection, defendant asked whether Schilt prepared the document, whether she had personal knowledge of its contents, and whether she verified any judgments or orders that would corroborate the statements in the document. Schilt answered no to all three questions. The trial court overruled the objection and received Exhibit 2 into evidence.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. OEC 801(3).

Out-of-court statements are generally inadmissible unless they are excluded from the definition of hearsay or qualify for a hearsay exception. OEC 801(4) (setting forth out-of-court statements that are not hearsay); OEC 802 (stating that hearsay is not admissible except as provided in OEC 801 to 806); OEC 803 and OEC 804 (setting forth exceptions to the hearsay rule). The party seeking the admission of hearsay bears the burden of proving that the statements satisfy the requirements of a hearsay exception. *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 222, 503 P3d 1233 (2022) (*Arrowood*). We review for legal error a trial court's ruling that the requirements for a hearsay exception have been met. *Id.* at 247 (citing *State v. Cunningham*, 337 Or 528, 538-39, 99 P3d 271 (2004)).

Here, the trial court admitted Exhibit 2 under the business records exception, OEC 803(6), which allows admission of:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness."

For purposes of OEC 803(6), "the 'record' is the statement that the proponent is offering for the truth of the matter asserted." *Arrowood*, 369 Or at 235. The proponent must prove that the record it is proffering has each of the characteristics enumerated in the statute, and it must do so through the testimony of the custodian or other qualified witness. *Id.* at 224.

Defendant contends that the state failed to establish that the "record" in Exhibit 2—the statement that defendant's driver's license was suspended from August 2020 to August 2023 for DUII—met the requirement that the record was made "by or from information transmitted by, a person with knowledge." OEC 803(6). That is because, defendant

contends, Schilt did not testify as to "who at the DMV created the record, who (if anyone) transmitted the information on which the record was based, and whether either of those individuals would have knowledge of the matter asserted by the record." Defendant argues that the Supreme Court's recent decision in *Arrowood* supports her position and, because we agree that it is instructive, we briefly turn to that case.

The plaintiff in *Arrowood* filed a civil breach of contract claim against the defendant seeking to recover damages for an insurance claim it had paid to a third party after the defendant had defaulted on a student loan contract. 369 Or at 217. The plaintiff moved for summary judgment and filed a supporting affidavit averring that Citibank, who originated the loan, had transferred the loan to Discover, and that Discover had filed the insurance claim that the plaintiff had paid. *Id.* The plaintiff submitted documents it had received from Discover, which included a "loan transmittal summary" detailing loans transferred from Citibank to Discover, to prove that those loan activities had occurred. *Id.* at 217, 235-36. To lay a foundation for the documents as business records, the plaintiff relied on an employee's affidavit averring, among other things, that all the documents were "either produced and maintained directly by" the plaintiff or were from Discover's proof of claim and "adopted" by the plaintiff and "relied upon in the ordinary course" of the plaintiff's business." *Id.* at 218.

The court construed OEC 803(6) to require, among other things, "that records have certain characteristics regarding when, by whom, why, and how they are made and kept" and "that a custodian or other qualified person testify about those characteristics," which "necessarily must include information about the practices of the business that initially made and kept the record." *Id.* at 240-41. Applying that construction of OEC 803(6) in that case, the court concluded that the plaintiff had failed to establish that the records had the characteristics required by OEC 803(6) because the employee did not aver that she had knowledge of the record-making or record-keeping practices of either Citibank or Discover, and the loan summaries did not indicate when, by

whom, or how the information they contained was initially reported and recorded. *Id.* at 218-19, 251.[3]

Here, the "record" at issue is the statement in defendant's DMV driver record that defendant's driver's license was suspended from August 2020 to August 2023 for DUII. We conclude that Schilt's testimony established that that record was "made by * * * a person with knowledge" because she testified that it was the regular practice of DMV to record the suspension once they receive notice of a DUII conviction, as well as the length of and the reason for the suspension. Although defendant correctly points out that Schilt did not testify who at DMV records the suspensions, *Arrowood* makes clear that isn't necessary. *See* 369 Or at 241 ("[T]he proponent of the evidence is not required to produce, or even identify, the specific individual upon whose firsthand knowledge of the record is based. A sufficient foundation is laid if the proponent shows that it was the regular practice of the activity to base such a record upon a transmission from a person with knowledge." (Internal quotation marks and citation omitted.)).

Further, although defendant contends that Schilt did not testify as to who (if anyone) transmitted the information to DMV (*i.e.*, the DUII judgment of conviction or order of suspension) on which the record was based, the state was not required to prove the validity of the underlying suspension, but only the fact of the suspension itself. *State v. Rust*, 240 Or App 749, 753, 248 P3d 445 (2011) ("Under ORS 811.182, the state is required to prove * * * the existence, but not the validity, of the suspension of the defendant's driving privileges." (Citing *State v. Jones*, 223 Or App 70, 80-81, 195 P3d 78, *adh'd to as modified on recons*, 224 Or App 451, 199 P3d 317 (2008).)) (footnote omitted); *see also id.* at 754 ("The state was required to prove only that (1) DMV had suspended defendant's license based on its receipt of a record of a previous conviction for assault while operating a motor vehicle; and (2) defendant drove a motor vehicle when the suspension was in effect.") (Footnote omitted.)). As Schilt testified,

---

[3] We applied *Arrowood* in *National Collegiate Student Loan Trust v. Gimple*, 318 Or App 672, 682, 508 P3d 561 (2022), holding that the affidavit by a loan subservicer's custodian of records failed to establish personal knowledge of the record-making practices of the loan originator for purposes of OEC 803(6).

DMV is the entity that suspends the license upon receipt of a record of conviction for DUII; she explained that the "restraints" in the driver record are "the DMV's suspensions" and confirmed that when DMV receives notice of a conviction, DMV "automatically suspends" the person's license. *See also* ORS 813.400 ("[U]pon receipt of a record of conviction for misdemeanor driving while under the influence of intoxicants, the Department of Transportation shall suspend the driving privileges of the person convicted."). That is what distinguishes this case from *Arrowood*. In *Arrowood*, the plaintiff submitted the third-party documents to prove that the loan activities by the third party had occurred. By contrast, here, the state offered defendant's DMV driver record to prove that DMV had suspended her license and the reason DMV had done so, not to prove that defendant had been convicted of DUII or that a court had ordered DMV to suspend her license. We therefore conclude that the state met its burden to establish that the record was "made by, or from information transmitted by, a person with knowledge" for purposes of OEC 803(6). The trial court did not err in overruling defendant's objection and admitting Exhibit 2.

## IMPOSITION OF MANDATORY FINE

Finally, we address defendant's third assignment of error in which she contends that the trial court plainly erred when it failed to exercise discretion in imposing and executing a mandatory fine under ORS 811.182(5).[4] Contrary to defendant's framing of this assignment of error, defendant actually preserved her contention that the trial court had discretion to impose, but then suspend execution of, the $1,000 fine. After the state recommended that the court impose the mandatory $1,000 fine, defendant asked "that the statutory fine be in part suspended based on her financial circumstances." When it announced the terms of defendant's sentence after inquiring into defendant's employment

---

[4] ORS 811.182(5) provides:

"In addition to any other sentence that may be imposed, if a person is convicted of the offense described in this section and the underlying suspension resulted from driving while under the influence of intoxicants, the court shall impose a minimum fine of at least $1,000 if it is the person's first conviction for criminal driving while suspended or revoked and a minimum fine of at least $2,000 if it is the person's second or subsequent conviction."

and financial circumstances, the trial court imposed the $1,000 fine, which defendant had expressly agreed was mandatory, and exercised its discretion to allow defendant to make monthly payments. Accordingly, we reject defendant's third assignment of error.

Affirmed.